## BRUCE DAVIS *v.* STATE OF MARYLAND
[No. 75, October Term, 1947.]

*Decided February 18, 1948.*

Appeal from the Circuit Court for Washington County (HUSTER, C. J., and MISH and HENDERSON, JJ.).

Bruce Davis was convicted of murder in the first degree, and he appeals.

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Paul B. Mules* and *E. Stuart Bushong* for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *W.*

W. *Dawson, State's Attorney for Montgomery County,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant appeals from a judgment of the Circuit Court for Washington County, sentencing him to life imprisonment, after a verdict of a jury finding him guilty of murder in the first degree, without capital punishment. He raises only one question, which he states as the admission in evidence over his objection of a sample of his blood. He claims that the circumstances under which it was taken from his body compelled him to testify against himself in violation of the Declaration of Rights.

It is necessary, in order to understand the question propounded, to relate certain facts in relation to the charge against him. On December 10, 1946, a Mrs. McAllister was found dead in a second story room of a dwelling house in Montgomery County, owned by her family, and used occasionally by her. She had been beaten to death with a hammer found in the room. Blood was found on her garments, on the floor, and on objects in the room.

The appellant was suspected because of his open and notorious friendship with the victim, and because he had been frequently seen driving her automobile. It was discovered that he had driven this car to his home in Tennessee, and he was arrested there on December 19th on the charge of stealing it. When arrested, he was in a hospital, under treatment for iodine poisoning, as a result of his having swallowed a large quantity of this drug. He was transported by two Montgomery County policemen in an automobile to Rockville, Maryland, and there placed in jail. On his arrival he was treated by the county medical officer, and given a laxative. This was on the evening of December 22nd.

On the following day another physician visited him, for the purpose, as the physician testified, of getting some of his blood at the request of the State's Attorney. This physician said the Captain of Detectives of Montgomery

County, who accompanied him on the visit, asked appellant if he would mind if he took his blood. Appellant held out his arm, and the physician took some of his blood, and turned the specimen over to the officer. The physician also testified that he put a stethoscope on appellant's heart, took his pulse, but did not tell him why he wanted the blood, except that he said it was at the request of the State's Attorney.

The Captain of Detectives corroborated this testimony, and said, in addition, that the doctor asked appellant if the medicine the county physician had given him the previous night had worked. He also stated that when he asked appellant if he had any objection to their getting a sample of his blood, appellant said no, and held up his arm to the physician. He said appellant was not informed of the purpose for which they wanted the blood specimen.

Appellant testified that the second doctor asked him if he knew the iodine he had taken might affect his eyes or his kidneys. The doctor then said they would like to take a blood test and a urine specimen. Appellant said he thought they were doing it for his health. He said that he never got a bottle for the purpose of giving the urine specimen, although he asked the jailer for one several times.

The blood specimen was admitted in evidence over appellant's objection, and testimony was offered that it belonged to Group "A". The blood from the slip and the brassiere found on the victim, and that from the blanket with which she was covered when found, and that on the hammer, belonged to Group "O". Blood found on the lining of the left sleeve of appellant's coat was also found to belong to Group "O". It was the contention of the State that this last blood might have come from the victim. To offset this, appellant offered testimony to show that while wearing the coat he had been in a fight with two men. He claimed that the blood in this sleeve must have come from one of these two men, who, he said, were bleeding during the fight. The evidence

showed that one of these men had Group "A" blood, and the other Group "O". The admission of appellant's blood specimen, therefore, tended to prove that the blood in appellant's coat did not come from his own body, but that it could have come either from the victim or from one of the two men with whom the appellant had fought.

We have recently had occasion to approve the admission of blood tests as a link in the chain of evidence against an accused in a rape case. *Shanks v. State,* 185 Md. 437, 45 A. 2d 85, 163 A. L. R. 931, annotated at page 939. In that case, in which the general subject was discussed at length, blood was taken from the coat of an accused, and evidence as to it was produced through witnesses other than accused. No objection is made here to the evidence and test of the blood taken from appellant's coat. The appellant raises a different question, which is whether testimony about his blood, taken from his body, by a subterfuge, is not inadmissible as a violation of his constitutional immunity from giving evidence against himself.

The State asserts that as no force or compulsion was used to get appellant's blood, and as nothing was said to mislead him, the giving of the sample by appellant was entirely voluntary. This contention ignores the fact that deception does not have to be by word of mouth. Circumstances may be used to indicate a purpose which is not the real purpose. The appellant may have well thought, as he claims, that the doctor wanted his blood for the purpose of determining the effect of the iodine poisoning, and not for the real reason for which it was taken. Certainly he was not told the real reason. We think we should treat the question as if the evidence was not obtained by the completely voluntary action of the appellant.

In the case of *Allen v. State,* 183 Md. 603, 39 A. 2d 820, 171 A. L. R. 1138, many decisions from other jurisdictions were reviewed and commented upon. Much conflict was found (see also *Wigmore on Evidence,* 3rd Ed., Vol. 8, sec. 2265, also sec. 165a), but this court drew a

line of demarcation between cases where the accused was compelled to allow a physical exhibition while on the witness stand, and those where the physical evidence, obtained from him, was testified to by other witnesses. The former class of cases was held within the constitutional prohibition, because it was testimonial compulsion. We are not here concerned with this type of evidence. The case before us falls within the class of cases where physical evidence has been obtained from an accused before trial, and has been offered in evidence against him at the trial.

Such a case arising under the 5th Amendment to the Constitution of the United States (not applicable to trials in State Courts, but similar to Article 22 of our Declaration of Rights) was considered by the Supreme Court of the United States, and the contention that a witness could not testify that a blouse, tried on by an accused, fitted him was termed "an extravagant extension" of the Amendment. *Holt v. United States*, 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138 (opinion by Mr. Justice Holmes). In *Downes v. Swann*, 111 Md. 53, 73 A. 653, 23 L. R. A., N. S., 739, 134 Am. St. Rep. 586, this court held that an accused could be photographed and measured according to the Bertillon system (commonly called finger-printing). In *Murphy v. State*, 184 Md. 70, 40 A. 2d 239, we recognized the use of fingerprints as a means of identification. Their admissibility is generally sustained. Annotation, 16 *A. L. R.* 370; 63 *A. L. R.* 1324. In the case at bar evidence of the fingerprints of appellant was admitted without objection for the purpose of comparison with fingerprints found on various articles in the house where the body of the victim was found.

This State has aligned itself with those jurisdictions holding that the question of how evidence is obtained is collateral to the issue of the guilt or innocence of the accused, and, therefore, pertinent evidence, no matter how obtained, will be admitted. *Lawrence v. State*, 103 Md. 17, 63 A. 96; *Meisinger v. State*, 155 Md. 195, 141 A. 536, 142 A. 190. This position was modified as to

cases involving. misdemeanors by the passage of Chapter 194, of the Acts of 1929, Code Article 35, Section 5. This act, however, does not affect cases in which the commission of a felony is charged, and has no application here. In a fairly recent case where the charge was house-breaking, larceny, and receiving stolen goods, the accused confessed his guilt and took the officers to a place where the stolen property was found in a box. The confession was offered in evidence, but this offer was abandoned because it appeared clearly that the accused made the statements and took the action he did after the sheriff had told him that it was best for him to tell the truth. The court, however, admitted the evidence of the box and its contents. In affirming this ruling we discussed the prior cases and reiterated the general rule above mentioned. *Marshall v. State,* 182 Md. 379, 35 A. 2d 115.

Many courts have held that an accused in a criminal case may be compelled to give a specimen of his blood, and that this is within the inherent judicial power. Other jurisdictions hold a contrary opinion. The cases are collected and discussed in a full note to *State v. Cram,* 176 Or. 577, 160 P. 2d 283, 164 A. L. R. 952, Annotation commencing at page 967. We do not here have to decide this question. What is before us is the admissibility of the evidence.

We are unable to see where there is any constitutional question involved in this case. There is no substantial difference between obtaining a specimen of blood from an accused and obtaining his fingerprints, or physical property, the possession of which by him is a pertinent question at issue in a felony charge against him. Whatever may be the rule in other jurisdictions we have long since adopted the rule that the admission of evidence thus obtained is not a violation of the Maryland Declaration of Rights, and we so hold in this case.

As we find no error in the ruling of the trial judge, the judgment will be affirmed.

*Judgment affirmed, with costs.*