STATE OF DELAWARE v. ERNEST SMITH

(*August* 26, 1952.)

TERRY, J., sitting.

*Stephen E. Hamilton, Jr.*, Deputy Attorney-General, for the State.

*John M. Bader* for the defendant.

Superior Court for New Castle County, No. 404, March Term, 1952.

TERRY, J.:

Two contentions are asserted under the defendant's motion to suppress. Under the first contention he suggests that if a person, such as himself in the present case, is taken into custody and, thereafter, detained under the provisions of the *Uniform Arrest Act, supra,* and during the first two hours of his detention, thereunder, submits voluntarily to a sobriety test, but is not arrested and charged with crime or released by the detaining officer at the expiration of two hours from the commence-

ment of his detention, then such neglect or default on the part of the detaining officer renders inadmissible all evidence relating to the results of the sobriety test, to which he voluntarily submitted.

■ The defendant's position under this contention is without merit. He was in legal custody at the time the test was given to him. If he voluntarily submitted thereto, then the Trooper's neglect in not placing him under arrest or releasing him at the expiration of the two hour period of detention under the act can have no effect upon the admissibility of testimony tending to show the results of the test. I am not called upon to determine the admissibility of evidence procured as a result of a sobriety test made upon a defendant after the first two hours of detention under circumstances such as exist in the present case. Compare *Richards v. State*, 6 *Terry* 573, 77 *A.* 2d 199.

It should be noted in passing, however, that if officers of the law are prone to disregard the clear and unequivocal language of the act relating to their powers and duties thereunder, then they subject themselves to probable prosecution by reason thereof.

The question to be determined under the defendant's second contention presents quite a different problem and a most interesting one; that is, was the defendant's constitutional privilege against self incrimination violated by reason of the sobriety test, given to him by the detaining officer in the light of the circumstances then existing.

Under this contention the defendant interposes the following arguments: (1) that in order to render the results of a sobriety test admissible in evidence against him the State must clearly establish that he fully understood his constitutional rights, was presented with an option of taking the test or not taking it, appreciated at the time the probable consequences thereof, and under such circumstances voluntarily submitted thereto. Otherwise, his constitutional guarantee against self-incrimi-

nation under Article 1, Section 7, of our Constitution would be invaded, and evidence relating to the results of such a test should be held to be inadmissible against him during his trial; (2) that the Trooper's course of conduct in the present case in insisting that the accused take the sobriety test in the light of his then intoxicated condition, as indicated by the Trooper's testimony, evidenced what should be held to be tantamount to compulsion on the Trooper's part and, as such, is conduct in violation of the accused's constitutional privilege against self incrimination, thereby rendering any evidence obtained as a result of such test inadmissible against him at his trial.

The problem presented concerns the import to be given to the phrase "[a defendant] shall not be compelled to give evidence against himself" as the same appears under the provisions of Article 1, Section 7, of our Constitution. The question is one of first impression insofar as the decisional law of this State is concerned. Courts of other jurisdictions, however, have passed upon the substantive question under factual circumstances and constitutional provisions with a marked similarity to the ones that exist in the present case. A study of these decisions reflects a sharp conflict in thought in respect to the proper interpretation to be given to this privilege in whatever terms expressed, as the same appears in the Constitutions in those jurisdictions. This divergence of thought is expressed on the one side by a line of cases that indicates that the privilege against compulsory self incrimination pertains only to testimonial compulsions or their equivalent. *Green Lake County v. Domes*, 247 *Wis.* 90, 18 *N. W.* 2d 348, 159 *A. L. R.* 204; *State v. Alexander*, 7 *N. J.* 585, 83 *A.* 2d 441; *Commonwealth v. Musto*, 348 *Pa.* 300, 35 *A.* 2d 307; *Davis v. State*, 189 *Md.* 640, 57 *A.* 2d 289; *State v. Cram*, 176 *Or.* 577, 160 *P.* 2d 283, 164 *A. L. R.* 952; *People v. Gardner*, 144 *N. Y.* 119, 38 *N. E.* 1003, 28 *L. R. A.* 699; *Shanks v. State*, 185 *Md.* 437, 45 *A.* 2d 85, 163 *A. L. R.* 931; *Harvard Law Review*, 59 at page 521. To the contrary will be found a line of cases indicating that the privilege extends beyond testimonial compulsions or their equivalent and embraces compulsory demon-

strations by acts which tend to incriminate and which are said to be obnoxious to the immunity granted as by words from the lips of the accused. *Apodaca v. State*, 140 *Tex. Cr. R.* 593, 146 *S. W.* 2d 381; *McManus v. Commonwealth*, 264 *Ky.* 240, 94 *S. W.* 2d 609; *People v. Corder*, 244 *Mich.* 274, 221 *N. W.* 309; *State v. Matsinger, Mo. Sup.*, 180 *S. W.* 856; *State v. Horton*, 247 *Mo.* 657, 153 *S. W.* 1051; *State v. Newcomb*, 220 *Mo.* 54, 119 *S. W.* 405.

This rule of privilege springs from the early common law. *Wigmore on Evidence, Volume* 8, *3rd Edition, Section* 2250. A review of the history of privilege and the spirit of the struggle by which it was accomplished reveals the object of the protection to be only against the employment of legal process to extract from the person's own lips an admission of his guilt, which will thus take the place of other evidence. *Wigmore, supra, Section* 2263.

The Federal Constitution and the Constitutions of the States, with two exceptions (Iowa and New Jersey), have embodied within them the principle of privilege. These constitutional sanctions, however, were not new creations at the time of their adoption; rather, they represented the recognition of the common law rule of privilege, as it then existed, and are but declaratory thereof.

Now in the light of the background that helps define the common law rule of privilege and our sanction added thereto under the provisions of Article 1, Section 7, of our Constitution, *supra*, the question is should the purpose in the establishment of the privilege under the common law, that is, *to only protect an individual against the employment of legal process to extract from his own lips an admission of his guilt which will thus take the place of other evidence*, be extended by this Court to include instances where persons are compelled to perform certain physical acts or to submit to examinations, other than oral, which would tell against them quite as effectively as would utterances intended by them to convey ideas.

■ Upon an extensive study of the question I have reached the conclusion that the limit of privilege under the common law is a plain one. The essence thereof is the freedom from testimonial compulsion, and the sole effect of its protection is to prohibit the employment of legal process to extract from the person's own lips an admission of his guilt, which will thus take the place of other evidence. Since testimonial compulsion and not compulsion alone is the component idea of the privilege, compulsory examinations of accused persons beyond the field of oral examinations, or the equivalent thereof, either before or upon their trial do not violate the privilege, for the simple reason that such examinations do not call upon the accused persons as witnesses; that is, upon their testimonial responsibility. If the framers of our constitutional provision relating to the rule of privilege intended that it should extend beyond the common law application, such an intention should have been so expressed.

■ The Supreme Court of the United States in the recent case of *Rochin v. California*, 342 U. S. 165, 72 S. Ct. 205, in dealing with the question of the admissibility of evidence obtained from an accused person against his will, stated in substance that while the Fifth Amendment imposed no restraint of any kind upon the States in the application of constitutional provisions or statutes of States defining privilege against self incrimination, nevertheless, if under all the circumstances in a given case the Court should find upon inquiry that the application of the state law in this respect was such that shocked the conscience of the Court, was repugnant to the decencies of civilized conduct, and was destructive of the very essence of a scheme of ordered liberty, then the Supreme Court has the power under the provisions of the due process clause of the Fourteenth Amendment to correct any error that might be found to exist in this respect in the record of a criminal trial in a State Court. In other words, a State is free to regulate the criminal procedure of its Courts in accordance with its own concepts of policy unless in so doing it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental. In

accordance with the foregoing philosophy, the Supreme Court concluded in the *Rochin* case that the extraction of morphine capsules from the stomach of Rochin against his will constituted such a display of brutality on the part of the law enforcing officers that evidence relating thereto should have been rejected at his trial, since in admitting the same he was deprived of due process of law under the Fourteenth Amendment.

As I have previously indicated, I think our constitutional provision found in Article 1, Section 7, relating to privilege against self incrimination, is but declaratory of the common law rule, and, as such, embraces only a prohibition by compulsory oral examination or the equivalent thereof of an accused person either before or upon trial; that is, to protect him from being required to incriminate himself by speech, or the equivalent of speech, such as written statements or confessions made by the accused, or actions which the accused might use in the place of words for the purpose of intending to communicate an idea, and in this respect dactylology is a good example. Otherwise, we lend judicial sanction to fanciful rights asserted by accused persons which shackle the functioning of law enforcement officers in the performance of their duties so as to prejudice the safety of the public.

In the application of the aforesaid rule to be followed in this State concerning privilege under the provision of Article 1, Section 7, of our Constitution, and as the same relates to the admissibility of evidence in a criminal proceeding, we must be ever mindful of the philosophy as laid down by the Supreme Court of the United States in the case of *Rochin v. California, supra.* In this respect those acts constituting behavior repugnant to the decencies of civilized conduct and amounting to an invasion of the due process clause of the Fourteenth Amendment cannot be catalogued. Each case must be determined upon the factual circumstances then existing.

In the present case it matters not whether the results of the sobriety test made upon the defendant on November 2nd

were obtained by compulsion alone or under circumstances tantamount thereto. The defendant was in legal custody at the time the test was conducted. It *cannot* be said in this case that the Trooper's course of conduct in giving to the defendant the sobriety test was repugnant to the decencies of civilized conduct, which would thereby constitute a denial to him of due process of law under the Fourteenth Amendment. The evidence relating to the results of the test will not be ordered suppressed.

The defendant's motion is denied.