Jack Edward BAILEY, Plaintiff in Error,

v.

CITY OF TULSA, Defendant in Error.

No. A–16069.

Court of Criminal Appeals of Oklahoma.

Nov. 24, 1971.

Jay D. Dalton, Ollie W. Gresham, Tulsa County, for plaintiff in error.

Larry Derryberry, Atty. Gen., Paul Crowe, Asst. Atty. Gen., John Jack Morgan, Chief Prosecutor, City of Tulsa, for defendant in error.

BRETT, Judge:

Plaintiff in Error, Jack Edward Bailey, hereinafter referred to as defendant, was convicted in the Municipal Court of the City of Tulsa, Case No. 107889, for the offense of operating a motor vehicle while under influence of intoxicating liquor, with punishment fixed at a fine of $75.00, 10 days in the city jail, and court costs.[1] Judgment and sentence was imposed on April 15, 1970, and this appeal perfected therefrom.

The conviction is based on a stipulation of facts. On November 27, 1969, while driving an automobile on a public street in the City of Tulsa, defendant ran into the rear of another automobile. The accident was investigated by the police, who advised defendant of his constitutional rights. The police further advised defendant he had a choice of taking either a breath test or blood test, and that if the result indicated intoxication it could be used against him in court. Defendant was further advised that he had a right to refuse to take either test, but if he refused to take either test his operator's license could be suspended or revoked for a period of six months. Defendant then elected to take the breath test and the result was .20.

Defendant contends he was convicted as a result of 47 O.S.Supp.1970, §§ 751–760, referred to as the Implied Consent Law, which defendant argues is unconstitutional as violating his right against self-incrimination under the United States and Oklahoma Constitutions.

Under the terms of the Implied Consent Act, § 751, it provides that a person operating a motor vehicle upon the public streets or highways shall be deemed to have given consent to a test of his blood or breath to determine alcoholic content. Section 753 provides if a conscious person under arrest refuses to submit to chemical testing, none shall be given, but the Commissioner of Public Safety shall revoke his license to drive for a period of six months. Section 754 provides for a hearing by the Commissioner for a person whose privilege to drive has been so revoked, which is appealable to the District Court. Section 756 provides that upon trial of any criminal action or proceeding arising out of acts alleged to have been committed by a person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood as shown by the blood or breath test is admissible. Fifteen-hundredths of one per cent (.15) or more by weight of alcohol in the blood is prima facie evidence that the person was under the influence of intoxicating liquor.

Defendant contends the Implied Consent Law compels the defendant to take a test for intoxication, thus giving evidence against himself because of the threat of a civil sanction to revoke the privilege to drive.

The United States Constitution, Fifth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held the chemical analysis

---

1. Although the transcript indicates a fine of $100.00, the judgment and sentence reflects a fine of $75.00.

of a defendant's blood showing intoxication was admissible and not a violation of the right against self-incrimination. The Supreme Court reasoned the blood test was physical evidence, not testimonial, and the Fifth Amendment right "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." 384 U.S. at 761, 86 S.Ct. at 1830.

However, defendant correctly argues the Oklahoma Constitutional prohibition against self-incrimination is broader in scope than the federal and not limited to testimonial evidence. The Oklahoma Constitution, Article II, § 21, provides "No person shall be compelled to give evidence which will tend to incriminate him." In Spencer v. State, Okl.Cr., 404 P.2d 46 (1965), this Court stated:

"* * * Article 2, Section 21 [Okl. Const.] supra, which precludes one from being compelled to give evidence against himself is broad enough to include demonstrations or acts which amounts to self-incrimination. It has been held that demonstration by an act which amounts to self-incrimination is as obnoxious to the immunity guaranteed by the Constitution, as one by words." 404 P.2d at 47.

Quoting other authorities, the *Spencer* decision further stated:

"Hence, there is the well-established doctrine that the constitutional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any fact which the accused has a right to hold secret." 404 at 49.

In several decisions, this Court has held that evidence of, or comment on, a defendant's refusal to take a test for intoxication is inadmissible as it violates the right against self-incrimination. Duckworth v. State, Okl.Cr., 309 P.2d 1103 (1957); Cupp v. State, Okl.Cr., 373 P.2d 260 (1962); Jackson v. State, Okl.Cr., 397 P.2d

920 (1964); and in Cox v. State, Okl.Cr., 395 P.2d 954 (1964), it was held:

"This Court is of the opinion the results of a test such as blood tests, drunkometer, etc. taken involuntarily is inadmissible for the reason it constitutes a violation of the Bill of Rights of this State, Art. 2, § 21, which says, 'No person shall be compelled to give evidence which will tend to incriminate him. * * *' We believe this section of the Bill of Rights is broad enough to encompass more than just oral testimony."

In still other decisions this Court has applied the rule that our constitutional prohibition against self-incrimination is not limited to mere testimonial evidence. See Stewart v. State, Okl.Cr., 435 P.2d 191 (1967); and Ritchie v. State, Okl.Cr., 415 P.2d 176 (1966).

■ It is therefore settled in this jurisdiction that nontestimonial evidence such as a test of defendant's blood for intoxication falls within the scope of the self-incrimination prohibition. Thus the federal distinction between testimonial as opposed to real or physical evidence from accused is not decisive of the question before this Court. Rather, the issue is, if the Implied Consent Law compelled defendant to take the test and thus give evidence which will tend to incriminate him in violation of our constitution.

It is significant that under the Implied Consent Law the individual may elect not to take either the blood or breath test. The result of such refusal is a possible revocation for six months of the privilege to drive which is an administrative matter. The statute provides no criminal consequences from a refusal to take the test and, as stated, we have expressly held that comment or evidence in a criminal trial of a motorist's refusal to take an intoxication test is inadmissible. Duckworth v. State, supra. However, the motorist by refusing to take the test, and thereby losing the privilege to drive for six months, is not forced to forfeit one right in order to exercise another right since operating a

motor vehicle is a privilege, not a right, which may be conditioned. In Opinion of the Justices, 255 A.2d 643 (1969), the Maine Supreme Court in considering the Implied Consent Law stated:

"The proposed statute in effect imposes a condition upon the holding of a license to operate a motor vehicle upon the public ways of this State. The condition is that the licensee voluntarily consent to taking a sobriety test under certain prescribed conditions. The statutory requirement rests upon the premise that there is no absolute right to obtain and hold an operator's license. There is rather a privilege which for valid reasons involving the public safety may be granted or withheld by the State. * * It is true that the State may not unreasonably, arbitrarily or capriciously withhold a license but it may properly condition the grant upon compliance with reasonable police power requirements."

In Prucha v. Department of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75 (1961), the Court in upholding the Nebraska Implied Consent Law held:

"The essence of the implied consent law is that by driving a motor vehicle on the public highway, the operator consents to the taking of a chemical test to determine the alcoholic content of his body fluid. By the act of driving his car, he has waived his constitutional privilege of self-incrimination, which has always been considered to be a privilege of solely personal nature which may be waived."

In Walton v. City of Roanoke, 204 Va. 678, 133 S.E.2d 315 (1963), which held the Virginia Implied Consent Law did not violate the constitutional privilege against self-incrimination, the Court observed:

"Moreover, the defendant was not compelled under § 18.1–55 to submit to the blood test. He had a choice of either allowing the test to be made or refusing it. His refusal could not be used as evidence in his trial on the charge of driving under the influence of intoxicants but, if found to be unreasonable, constituted grounds for revocation of the privilege of operating his automobile upon the highways of this State. However, defendant is afforded a hearing on his latter issue subsequent to his trial for driving under the influence of intoxicants.

"The right to operate a motor vehicle on the highways of this State is not a prop erty or unrestrained right, but a privilege which is subject to reasonable regulation under the police power of the State in the interest of public safety and welfare." 133 S.E.2d at 318.

Courts in other jurisdictions in upholding implied consent laws have likewise reasoned that the motorist consents to the taking of a breath or blood test for intoxication, and by this consent waives his constitutional privilege against self-incrimination upon taking a test. See: Lee v. State, 187 Kan. 566, 358 P.2d 765 (1961); Blydenburg v. David, 413 S.W.2d 284 (Mo., 1967); Marbut v. Motor Vehicle Department, 194 Kan. 620, 400 P.2d 982 (1965).

In the final analysis, if defendant had refused to take either the blood or breath test, he would not have been compelled to give evidence which would incriminate him at his trial for driving while intoxicated. By taking the test he knowingly waived the self-incrimination privilege. This ability to elect refutes the claim of compulsion.

 We therefore hold that under the Oklahoma Implied Consent Law, 47 O.S.Supp.1970, §§ 751–760, the motorist is not compelled in violation of his right against self-incrimination to give evidence which will tend to incriminate him if he elects to take a blood or breath test for intoxication as he consents to the admission in court of the result of such a test; and that revocation of the privilege to operate a motor vehicle for six months upon refusal to take a test for intoxication does not compel the defendant to give evidence

in violation of his right against self-incrimination.

Accordingly, the judgment and sentence is hereby affirmed.

BUSSEY, P. J., concurs.