**Application of Bryce Allen BAGGETT for restoration of Drivers License.**

No. 45693.

Supreme Court of Oklahoma.

July 16, 1974.

As Corrected on Denial of Rehearing
Oct. 8, 1974.

Robert S. Baker, Oklahoma City, for appellant; Pierce, Couch, Hendrickson, Gust & Short, Oklahoma City, of counsel.

LeRoy J. Patton, Gen. Counsel, Dept. of Public Safety, Oklahoma City, for department.

SIMMS, Justice.

This is an appeal from the District Court of Oklahoma County, affirming an

order of the Oklahoma Department of Public Safety (Department) revoking the drivers license of Appellant, pursuant to 47 O.S.1971, §§ 751–760, hereinafter referred to as the "Implied Conset Law." Appellant does not contend he was deprived of his operator's license nor his right to operate a motor vehicle upon the highways of Oklahoma following his refusal to submit to a chemical test pursuant to the 'Implied Consent Law' or during the pendency of the proceedings in this case.

On October 9, 1971, about 5:00 p. m. Appellant was driving his automobile down Robinson Street in Oklahoma City. He was stopped by Officers Gaylon and Grissom. The officers testified they saw Appellant disregard three stop lights. The officers stopped the car. They testified they smelled the odor of alcohol in the vehicle and on the breath of Appellant. One of the officers saw a glass tumbler in the car and said it looked like it was probably bourbon and Coke. Appellant volunteered, "No, it's bourbon and Seven-Up." Officer Grissom testified that he informed Appellant of the Miranda warning and the Implied Consent Law, as follows:

"Implied Consent Law Number one. is that you are . . . you have been arrested for driving under the influence of intoxicating beverage or alcohol. *Number two is that you are hereby requested to submit to a Breathalyzer or a blood test to determine the alcoholic content of your blood.* Number three is that at your own expense you may have an additional test made by a qualified physician or nurse. The rest of it is that at the refusal of either test your license will automatically be revoked by the Department of Public Safety for a period of six months. That's what I advised him at this time. Maybe not word for word, but the meaning was there." (emphasis supplied)

When asked what Appellant's response was, Officer Grissom testified:

"He just . . . At the time I informed him of this, he just shook his head and said, 'Uh-huh, uh-huh,' as I was stating these rights to him."

Officer Grissom further testified:

"Before he was advised of the rights I have just stated, I noticed Mr. Baggett's balance was fair to good. One particular instance I noticed, he was standing up near the front of his vehicle and I noticed him kind of leaning and at one point he was leaning to the point of almost falling over and he put his hand on the fender of his car to steady himself. That was the only incident I witnessed whereas it would indicate the influence of alcohol."

Appellant was transported to the police station and taken to the Breathalyzer room by Officer Gaylon. The officer repeated the Implied Consent Law to Appellant, reading from a four feet by four feet sign posted on the wall. Officer Gaylon testified as follows:

"I accompanied Mr. Baggett back to the Breathalyzer Room where I read him the Implied Consent Law of the alcoholic content test, where whenever I read line one, Mr. Baggett interrupted me . . . Before I started reading I asked Mr. Baggett if he would please read along with me as I read it out loud. He looked up at the board as if he was going to read along with me and whenever I finished line one, he said, 'You don't need to read anymore, I've already finished, boy. You must be a slow reader.' At that time I started all over and started reading number one again and I got to about in the middle of number two and he said that he was already through reading it, and that I needn't continue reading. At that time I started over again and I did read completely through the Consent Law, which is posted on the board. Mr Baggett refused either test . . ."

Officer Gaylon testified that after he read the Implied Consent Law, Appellant responded:

"A. I'll buy number five.

Q. And what was number five again?

A. Number five reads, you have the right to refuse either test, but if you do so, your drivers license shall be revoked by the Department of Public Safety for a period of six months.

Q. What happened after he said, 'I'll buy number five.'

A. I asked him, I said, 'Will you take a breath test?' He said, 'No.' I said, 'Will you take a blood test?' He said, 'No. I'll do any other test you want. I'll stand on my head, I'll blow up a balloon or walk a straight line, but I won't take the breath test or blood test.'"

Officer Grissom filed an affidavit with the Commissioner of Public Safety to invoke 47 O.S.1971, § 753. Pursuant to this affidavit, the Assistant Commissioner of Public Safety conducted a hearing on December 16, 1971, which resulted in an order revoking Appellant's drivers license for six months. The District Court of Oklahoma County sustained the order.

Appellant originally alleged seven propositions of error, but in his Reply Brief abandoned one of his allegations. The following issues are presented to this Court: (1) Whether the Officer's affidavit was sufficient to initiate the revocation; (2) If the issue on revocation should be whether the defendant was in fact, intoxicated; or whether the arresting officer merely had reasonable grounds to believe the defendant was intoxicated; (3) If factual intoxication is the legal test whether there was sufficient evidence to find the defendant was intoxicated; (4) Whether 47 O.S. 1971, § 751 et seq, violates the Constitutional guaranty against self-incrimination; (5) Whether the title of the Act of the Implied Consent Law was sufficient to "clearly express the content of the Implied Consent Law"; (6) Whether the Implied Consent Law satisfies due process requirements.

It should be noted that the first and third propositions present evidentiary issues, involving mixed questions of law and fact. The second, fifth, and sixth propositions present constitutional issues. We shall consider the issues in the order presented.

## I. THE SUFFICIENCY OF THE AFFIDAVIT

Appellant argues Officer Grissom's affidavit was false and based upon hearsay. The affidavit Officer Grissom sent to the Commissioner of Public Safety is on a printed form and states in part as follows:

"I requested the above named person to submit to a chemical test of his breath or blood for the purpose of determining the alcoholic content of his blood within two hours after his arrest; That said person refused to submit to such a test at (time and location) *6:00 p.m. 10/9/71, at Oklahoma City Police Station.* Indicating a refusal by: *Stating, 'I will not take a test.'* That he was informed by *J. Gaylon* that refusal to submit to such a test would initiate action by the Department of Public Safety for the revocation of his license, permit or privilege to drive in the State of Oklahoma for a period of 6 months, as provided in 47 O.S.Supp.1968, § 753: and, That he was informed by *H. Allread* that, at his request and expense, reasonable opportunity would be given for additional chemical tests for blood alcohol content administered by a qualified person of his own choosing as provided in 47 O.S.Supp.1968, § 752."

The affidavit was subscribed and sworn to by Wayne Grissom.

Appellant alleges the affidavit was false on the very technical and tenuous grounds that it states: "I requested the above named person to submit to a chemical test."

█ Officer Grissom testified that the request was included in the routine recitation of the Implied Consent Law he gave Baggett at the scene of the arrest. The fact that the request was part of the recitation does not vitiate its validity. But Appellant asserts that the request mentioned in the affidavit was made at "6:00

p.m., 10/9/71, at Oklahoma City Police Station." A reading of the affidavit shows that it was merely the refusal that was made at the police station.

Officer Grissom admits he was not present when the request was made by Officer Gaylon at the Police Station. Contrary to Appellant's position, it is clear that the affidavit does not state that Officer Grissom made the request at the police station, merely that he made the request "within two hours after his arrest." There was testimony that Officer Grissom heard Appellant state to another officer that he would not take the test.

There is nothing in the record to show that the affidavit was false in any particular, and the suggestion that the record shows that the Officer made an illegal report is patently wrong.

Appellant also alleges that the facts averred in the affidavit would not cause a reasonable man to believe petitioner was under the influence. The affidavit states in part:

"Observed subject disregard signal lights, change lanes improperly, and exceed speed limit 700 to 300 block North Robinson. Upon direct contact detected moderate to strong odor of alcoholic beverages on breath; eyes watery, pupils dilated; balance fair to good; speech good; very talkative, cocky and insulting."

Appellant concludes that since a jury in the criminal case determined he was not guilty of driving while under the influence, the facts averred in the affidavit would not cause a reasonable man to believe Appellant was under the influence.

■ While the jury trial on the criminal charge was not in evidence and is not properly before this Court, it is to be emphasized that, first, the legal burden of proof in the criminal case is "beyond a reasonable doubt," while in the Suspension Hearing, the legal burden of proof is "preponderance of evidence," [ante Proposition III]; second, as distinguished from the actual commission of an offense necessary to arrest for misdemeanor, by the exact verbage of the Implied Consent Law, the officers affidavit need only state "reasonable grounds to believe."

"Probable cause" and "reasonable grounds to believe", to us, are synonymous. See: Black's Law Dictionary, 4th edition. In dealing with the legal definition of "probable cause" as, for example, in arresting for a felony without warrant, the Court of Criminal Appeals said in State v. Chronister, Okl.Cr., 353 P.2d 493 (1960):

"* * * If the facts are such that a reasonably prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without a warrant, although subsequent events prove that no offense had been committed * * *."

Thus, the standard of probable cause set forth in *Chronister, supra,* is the same standard applied in determining whether the law enforcement officer has reasonable grounds to believe a person is intoxicated. Of course, we do not say that mere, ungrounded suspicion will support an affidavit alleging intoxication.

■ The Court of Criminal Appeals has consistently held that a person is "operating a motor vehicle while under the influence of intoxicating liquor" if his nervous system, brain or muscles are impaired to any appreciable degree so that he cannot operate his automobile as would an ordinary prudent and cautious man, in full possession of his faculties, using reasonable care, under like conditions. See: Luellen v. State, Okl.Cr., 81 P.2d 323 (1938); Evans v. State, Okl.Cr., 312 P.2d 908 (1957); Harrison v. State, 95 Okl.Cr. 123, 240 P.2d 459 (1951).

■ We believe the officer's testimony in the instant case sufficiently establishes that the officer had probable cause or reasonable belief that Appellant was under the influence of intoxicating liquor within the meaning of 47 O.S.1971, § 11-902. The affidavit was sufficient to support the initiation of the action to revoke the drivers

license. Department of Public Safety v. Robinson, Okl., 512 P.2d 128 (1973).

■ We are of the persuasion that the acquittal by a jury of appellant's criminal charge of driving while under the influence of intoxicating liquor is no bar to the suspension of his license, as ordered by the Department. As well, the acquittal by a jury of the criminal charge has no relevancy upon the facts averred in the officer's affidavit which was filed with the Department of Public Safety which initiated these proceedings.

Prucha v. Dept. of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75, 88 ALR2d 1055, holds:

"The plaintiff in his petition alleges that the revocation of his driver's license was arbitrary and capricious because he was not convicted of an offense of operating a motor vehicle while under the influence in the original court. *The fact of acquittal* of a *criminal charge* of operating a motor vehicle while under the influence of alcoholic liquor does not have any bearing upon a proceeding before the director for the revocation of a driver's license under the provisions of law separate and distinct from criminal statutes."

"As stated in Anderson v. MacDuff, supra, where a person who refused to submit to a blood test at the time he was arrested and charged with driving while intoxicated was acquitted upon trial of that charge, subsequent revocation of his driver's license under another law providing for licensing penalty was not precluded by the prior acquittal."

Also, the following language is found in Smestad v. Ellington, (ND) 191 N.W.2d 799:

"The fact that the charges against the petitioner were dismissed and that there was no conviction is immaterial. All that the law now requires as condition precedent to a chemical test is that there be a valid arrest. We have found that there was a valid arrest in this case prior to the demand that the petitioner submit to a chemical test. When the highway user refuses to submit to such test after a valid arrest, the Highway Commissioner is empowered to revoke this driver's license."

To the identical effect is Commonwealth of Penn. v. Abraham, 7 Pa.Cmwlth. 535, 300 A.2d 831 (1973):

"Despite the fact that the charge against appellee was dismissed, there remains the separate refusal to take the test. For the simple reason that the suspension was a civil proceeding, and the acquittal was a result of a criminal proceeding, the Secretary acted properly. Accord, Appeal of Walker, 20 Ches.Co.Rep. 154 (1972). As stated in Annot., 96 A.L.R. 2d 612, 614 (1964),

'However, where those circumstances which were the basis of the revocation or suspension were also the basis of charges in a previous criminal case, it might seem to the layman driver that the state has been allowed to try him twice for the same offense, and his notions of fair play might be injured all the more where the previous criminal prosecution resulted in a determination he was "not guilty". Notwithstanding the notions of fair play entertained by laymen, however, what little authority there is on the subject holds that the later proceeding to revoke or suspend his license, since not intended as a punishment of the driver but designed solely for the protection of the public in the use of the highways, does not in the legal sense subject him to double jeopardy or punishment, nor is a judgment of acquittal in the previous criminal case res judicata on the issue of guilt or innocence in the later proceeding, for, as stated by [Commonwealth v. Funk, 323 Pa. 390, 186 A. 65 (1936)], such judgment does not have any probative value in the subsequent proceeding beyond the mere fact of its rendition, the reason for this being found in the nature of the criminal proceedings and the type of proof required therein, for in a criminal pro-

ceeding the guilt of the accused must be established beyond a reasonable doubt, whereas in a civil proceeding to revoke a license it is sufficient if the offense is established by a preponderance of the evidence.' "

The Appellant's argument was rejected by this Court in Robertson v. State, Okl., 501 P.2d 1099 (1972):

"The implied consent law is not a criminal proceeding. It is a civil administrative proceeding separate and distinct from the criminal action on a charge of driving while intoxicated. Each proceeds independently of the other. Kruger v. Fulton, 169 N.W.2d 875, 877 (Iowa 1969). The fact that in the criminal proceedings the driver is not proven beyond a reasonable doubt to have been driving while intoxicated has no bearing on civil proceedings under the implied consent statutes revoking his driver's license for refusal to submit to a chemical test. Fritts v. Dept. of Motor Vehicles, 6 Wash.App. 233, 492 P.2d 558, 562 (1971)."

II. WHETHER THE TRIAL COURT WAS CORRECT IN LIMITING THE ISSUES TO APPELLANT'S REFUSAL TO TAKE THE TEST AND WHETHER THE OFFICER HAD REASONABLE CAUSE TO BELIEVE APPELLANT WAS UNDER THE INFLUENCE; OR WHETHER THE ISSUE SHOULD HAVE BEEN WHETHER APPELLANT WAS, IN FACT, DRIVING WHILE UNDER THE INFLUENCE.

The Oklahoma Legislature derived our Implied Consent Law from the Uniform Vehicle Code. Section 6–205.1(d) of the Uniform Vehicle Code provides, in part, that upon review:

" * * * the scope of such a hearing for the purposes of this section shall cover the issues of whether *a law enforcement officer had reasonable grounds to believe the person had* been

driving or was in actual physical control of a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor * * *." (emphasis supplied)

Title 47, O.S.1971, § 753, like § 6–205.-1(c) of the Uniform Vehicle Code provides that a person's license shall be revoked for six months by the Commissioner of Public Safety "upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving . . . while under the influence . . . and that the person had refused to submit to the test . . ."

Title 47, O.S.1971, § 754, however, differs from § 6–205.1(d) of the Uniform Vehicle Code, set forth above, in the following particular:

"The hearing shall be transcribed and its scope shall cover the issues of *whether the person had been driving* or was in actual physical control of a vehicle upon the public highways *while under the influence of alcohol or intoxicating liquor,* whether the person was placed under arrest and whether he refused to submit to the test or tests." (emphasis supplied) 47 O.S. § 754.

Appellant urges that § 754 requires proof that the person had been driving while under the influence. The Department argues that §§ 753 and 754 must be construed as a whole, and that the legislature intended to make the reasonable belief of the officer the criteria for determining whether the person arrested should have been required to submit to a test.

This Court will not substitute its judgment for that of the legislature on the question of whether the implied consent law would be stronger if Oklahoma had adopted the act as recommended by the Uniform Vehicle Code. It is clear that the Oklahoma legislature intended to omit from § 754 the Uniform Vehicle Code wording *"whether a law enforcement officer had reasonable grounds to believe,"* and insert the words *"whether the person had*

*been driving . . . while under the influence."*

The Oklahoma Statutes are clear in their language. Section 753 is merely the statute that sets the machinery of revocation in motion and provides that the Commissioner shall revoke a person's license upon the receipt of a sworn report that the law enforcement officer had reasonable grounds to believe the person had been driving while under the influence and refused the test. Section 754 provides the arrested person a hearing before the Department of Public Safety where one of the issues shall be *"whether the person had been driving . . . while under the influence."* Section 755 provides for judicial review of the Department's order by way of appeal to the District Court.

The proceedings on the appeal are governed by the provisions of 47 O.S.1971, § 6–211 which provides in part as follows, sub-para. (e):

"Upon said hearing said court shall take testimony and examine into the *facts* and *circumstances,* including all of the records on file in the office of the Department of Public Safety relative to the offense committed and the driving record of said licensee, and *determine from said facts, circumstances and records* whether the petitioner is entitled to a license or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department. * * *" (emphasis supplied)

█ Appellant is correct in his interpretation of Section 754. The trial court agreed and found that the Department erred in stating that the issue was whether the officer had reasonable grounds to believe Appellant was driving while under the influence. The trial court made the following specific findings:

"It has been contended here that the Commissioner made a finding that the arresting officer had reason to believe that Mr. Baggett was driving while under the influence of intoxicating liquor when he refused to take the test, and it has been contended that it was necessary

on that hearing that the Commissioner actually find from the evidence in the hearing before him, not that the officer had reason to believe, but that the person was in fact under physical control of a vehicle while under the influence of intoxicating liquor; and the Court agrees with that interpretation. I think the Commissioner erred in that regard."

"To make a short story shorter, the Court believes and holds that the Commissioner arrived at the correct result for the wrong reason. And based upon this hearing here today, the Court finds that *Mr. Baggett, the Petitioner, at the time of the arrest had been driving and in control of his vehicle on the public highways while under the influence of intoxicating liquor.* That he was placed under arrest, and that he refused to submit to the breath or blood test either one. They were both offered him. He refused." (emphasis supplied)

█ In reaching the conclusion that the Appellant was, in fact, intoxicated under the evidence, the trial judge had the authority under 47 O.S.1971, § 6–211 to take testimony and "examine into the facts and circumstances." Appellant complains that he was not allowed to introduce evidence at the hearing before the Department on the question of whether he was, in fact, intoxicated, since the Department stated the issue was merely whether the officer had reasonable belief that the Appellant was intoxicated. The record before the trial court shows that Appellant was not denied his right to introduce evidence in the de novo hearing held by the trial court. On the contrary, Appellant stipulated in the trial court that the District Court could consider the evidence heard by the Department. When asked by the trial judge if he wanted to present any evidence besides the transcript, the Appellant "declined" and stated, "nothing further."

### III. WHETHER APPELLANT WAS DRIVING WHILE INTOXICATED

█ The trial judge correctly applied the test of preponderance of the evi-

dence in finding that the Appellant was, in fact, driving while intoxicated. Robertson v. State, *supra*. There is ample evidence in the record to support such a finding. The arresting officers testified that they saw Appellant disregard three stop lights in a row; that they had to ask Appellant three times to get out of his car; that there was an odor of alcohol about the person and breath of the Appellant; that the Appellant leaned at one point almost to the point of falling over and he had to put his hand on the fender to steady himself; that a tumbler glass containing bourbon and Seven-Up was found in the car. These facts considered together justify the trial court's finding by a preponderance of the evidence that the Appellant was in fact driving while intoxicated under the test set forth in Luellen v. State, *supra*.

## IV. THE SELF-INCRIMINATION QUESTION

Appellant urges the requirement that a person be required, under penalty of forfeiture of his drivers license, to elect whether to take the breathalyzer test violates his constitutional rights against self-incrimination.

The Fifth Amendment to the United States Constitution provides that no person shall "be compelled in any criminal case to *be a witness* against himself." The United States Supreme Court, in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), held that the privilege against self-incrimination protects an accused only from being compelled to provide the State with evidence of a *communicative nature* and that a chemical test for blood-alcohol content is not communicative and thus not protected by the Fifth Amendment.

Article 2, § 21, Oklahoma Constitution, states "No person shall be compelled to *give evidence* which will tend to incriminate him."

██ In Bailey v. City of Tulsa, Okl. Cr., 491 P.2d 316 (1971), the Oklahoma Court of Criminal Appeals cited Spencer v. State, Okl.Cr., 404 P.2d 46 (1965), for the proposition that the Oklahoma self-incrimination privilege is broader than the Fifth Amendment in that the Oklahoma Constitution does not limit its prohibition to communicative evidence. *Bailey* concludes, however, that requiring a person to submit to a breathalyzer test does not violate the self-incrimination privilege because a license to drive is a privilege not a right. We agree with Appellant that the right vs. privilege dichotomy should not be used to arbitrarily deny a person his drivers license for his assertion of a constitutional right. See, Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

While we find it unnecessary to hold that Oklahoma's view of the self-incrimination privilege is erroneous, it should be pointed out that we recognize the inconsistency of *Bailey, supra*. The *Bailey* rationale that the Oklahoma self-incrimination privilege is broader than the Federal is not only inconsistent with the Supreme Court's view in *Schmerber, supra*, but with that of other states having self-incrimination prohibitions identical in nature to Oklahoma. The *Bailey* opinion is even inconsistent with past holdings in this State, as will be demonstrated.

It has been uniformly held by the Court of Criminal Appeals that requiring a defendant to submit to fingerprint exemplars does not violate his right against self-incrimination. Lester v. State, Okl.Cr., 416 P.2d 52 (1966); Hill v. State, Okl.Cr., 500 P.2d 1080 (1972); Campbell v. State, Okl. Cr., 493 P.2d 1126 (1972). Nor does the taking of handwriting specimens violate a defendant's right against self-incrimination. Smith v. State, Okl.Cr., 462 P.2d 328 (1969). These are examples of evidence which, like the breathalyzer test, are non-communicative and non-testimonial, but demonstrative, in nature. It is difficult to see how they differ from the breathalyzer test. In fact, the United States Supreme Court considered this question in *Schmerber, supra*, 384 U.S. at 764, 86 S.Ct. at 1832, and found a chemical test to be simi-

lar in nature to other non-communicative evidence:

". . . both federal and state courts have usually held that it offers no protection against compulsion to submit for fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture."

Other states with constitutional self-incrimination provisions identical to Oklahoma have reached the same result as that in *Schmerber*. For example, in Prucha v. Dept. of Motor Vehicles, 172 Neb. 415, 110 N.W.2d 75 (1961), the Nebraska Supreme Court considered the self-incrimination provision of the Nebraska Constitution, which, similar to Oklahoma's Constitution, states "No person shall be compelled, in any criminal case, to give evidence against himself . . . ." The court held, notwithstanding the fact the language appeared to be broader than the Federal Fifth Amendment, the Nebraska prohibition against self-incrimination is restricted to oral communications and does not preclude the use of chemical tests to determine blood-alcohol content. Also, People v. Brown, Colo., 485 P.2d 500 (1971); State v. Kenderski, 99 N.J.Super. 224, 239 A.2d 249; Heer v. Department of Motor Vehicles, 252 Or. 455, 450 P.2d 533; State v. Berg, 76 Ariz. 96, 259 P.2d 261 (1958); State v. Smith, 8 Terry 334, 47 Del. 334, 91 A.2d 188. The Supreme Court in *Schmerber* considered the different wording in the constitutions of various states on the self-incrimination privilege and stated:

"Many state constitutions, including those of most of the original Colonies, phrase the privilege in terms of compelling a person to give 'evidence' against himself. But our decision cannot turn on the Fifth Amendment's use of the word 'witness'. As the manifest purpose of the constitutional provisions, both of the states and of the United States, is to prohibit the compelling of testimony of a self-incriminating kind from a party or witness, the liberal construction which must be placed upon constitutional provi-

sions for the protection of personal rights would seem to require that the constitutional guaranties however differently worded, should have as far as possible the same interpretation * * *." Schmerber, supra, 384 U.S. at 761, 86 S. Ct. at 1831.

■ Notwithstanding the *Schmerber* holding, under the Oklahoma Statutes, 47 O.S.1971, §§ 751–760, there can be no taking of a person's breath for an alcohol test unless the person first gives his consent. The Oklahoma Implied Consent Law clearly requires the defendant's consent before the chemical test for intoxication can be accomplished. Moreover, under present Oklahoma law as pronounced in *Bailey, supra,* if a person refuses to take the test, the refusal cannot be commented on or used against him in a later criminal proceeding because it would violate his right against self-incrimination under the Oklahoma Constitution. Duckworth v. State, Okl.Cr., 309 P.2d 1103 (1957); Cupp v. State, Okl.Cr., 373 P.2d 260 (1962); Jackson v. State, Okl.Cr., 397 P.2d 920 (1964).

■ The self-incrimination privilege applies only to criminal cases and a drivers license revocation is not criminal in nature. Robertson v. State, *supra;* Bailey v. State, *supra.* Therefore, since the Appellant refused to take the test there is no evidence that can be used against him in a criminal case and the self-incrimination privilege is inapplicable.

■ We therefore conclude that Oklahoma's Implied Consent Law is not violative of either the Fifth Amendment to the Federal Constitution nor does the Act violate Art. 2, § 7, Oklahoma Constitution. Robertson v. State, *supra.* Bailey v. State, *supra.*

## V. THE SUFFICIENCY OF THE TITLE OF THE IMPLIED CONSENT BILL

Appellant argues that since the title of Senate Bill 28 of the 1967 Oklahoma Legislature did not state that a person driving his automobile on Oklahoma highways was

deemed to have waived his constitutional right against self-incrimination, the statute is void.

The title to Oklahoma's Implied Consent Law, Senate Bill 28, Thirty-First Legislature, First Session, 1967, 47 O.S.1971, §§ 751 to 760, reads:

"AN ACT RELATING TO MOTOR VEHICLES: PROVIDING FOR CHEMICAL TESTS FOR OPERATORS OF MOTOR VEHICLES ON PUBLIC HIGHWAYS, OR STREETS, WHEN A LAW ENFORCEMENT OFFICER HAS REASONABLE GROUNDS TO BELIEVE THE PERSON DRIVING OR IN ACTUAL PHYSICAL CONTROL OF SUCH MOTOR VEHICLE WAS UNDER THE INFLUENCE OF ALCOHOL OR INTOXICATING LIQUOR: CREATING THE BOARD OF CHEMICAL TESTS FOR ALCOHOLIC INFLUENCE: PROVIDING FOR METHOD AND REGULATIONS PERTAINING TO SUCH TESTS: AUTHORIZING REVOCATION OF LICENSE AND JUDICIAL REVIEW: PROVIDING FOR ADMISSION OF EVIDENCE SHOWN BY CHEMICAL TESTS: PROVIDING FOR NOTICE TO OTHER STATES IN CASE OF A NON-RESIDENT: REPEALING CONFLICTING LAWS: PROVIDING FOR SEVERABILITY: AND DECLARING AN EMERGENCY."

Article V, § 57 of the Oklahoma Constitution provides:

"Every act of the Legislature shall embrace but one subject, which shall be clearly expressed in its title * * *."

This provision has been most recently constructed by this Court in Continental Oil Company v. State Board of Equalization, Okl., 494 P.2d 645 (1972):

"The constitutional provision that the subject of an act must be clearly expressed in its title does not require that the Act contain an abstract of the contents of the act. The title is sufficient if it expresses the general purpose and subject of the act in general terms."

This Court has also stated in Jackson v. Yochum, 206 Okl. 531, 244 P.2d 1134 (1952):

"These provisions of the Constitution does not require that the title contain a complete abstract in the index of its content. The title may express the purpose of the object of the law in very general terms leaving the details in connection with the accomplishment of the same to be set forth in its body."

 The title of the Act in question satisfies the clarity of purpose requirement of Article 5, § 57. The title clearly expresses that the Bill is providing for chemical tests for operators of motor vehicles when a law enforcement officer has reasonable grounds to believe the person was driving while intoxicated. The title also states that the Act authorizes revocation of license. A requirement that the title be any more specific would be a requirement that the entire Act be restated in the title. The general terms of the title are sufficient to satisfy the Oklahome Constitution.

Moreover, we find no merit in Appellant's argument that the title should have stated that a person driving on Oklahoma highways is deemed to have waived his right against self-incrimination. The constitutional right against self-incrimination is not affected by the Oklahoma Implied Consent Law.

## VI. THE DUE PROCESS REQUIREMENT

 Appellant insists in his brief that the Implied Consent Statute, as applied in the instant case, violates the due process guaranty because it intrudes upon his constitutional right against self-incrimination and is thus a too broad means of achieving the desirable goal of getting drunk drivers off the road.

We hold that the means used by the Implied Consent Laws to achieve the goal of

public safety does not violate a person's substantive due process. *Robertson, supra.*

The Revocation of Appellant's Drivers License is affirmed.

All the Justices concur.