**Edward B. BROWNING, Appellant,**

v.

**STATE of Oklahoma ex rel. DEPARTMENT OF PUBLIC SAFETY,
Appellee.**

No. 75939.

Court of Appeals of Oklahoma,
Division No. 2.

Feb. 26, 1991.

Rehearing Denied May 6, 1991.

Certiorari Denied July 9, 1991.

Stephen G. Fabian, Jr. and Michelle R. Day, Fabian & Associates, Edmond, for appellant.

Lisa K. McLaughlin and Blair Easley, Jr., Oklahoma City, for appellee.

BRIGHTMIRE, Judge.

The dispositive issues here are (1) whether the Department of Public Safety acquired jurisdiction to revoke the appellant's driver's license following his arrest for driving under the influence of alcohol, and (2) whether the Department carried its burden of proof in support of the challenged order.

We answer the first question in the affirmative, the second in the negative.

### I

On January 20, 1990, the petitioner-appellant, Edward B. Browning, while being followed in his automobile by a Stillwater police officer, was observed accelerating from a red traffic light "at a rapid rate of speed." As a result, "the tires squealed and the car continu[ed] to pick up speed." The officer followed Browning for several blocks and "paced" him at forty miles per hour in a thirty-mile-per-hour zone, whereupon he "initiated the traffic stop." When Browning approached the officer's squad car, the officer said he detected the "strong odor" of alcohol, and observed that Browning had "slurred speech and ... bloodshot eyes." He was then placed under arrest for suspicion of driving under the influence of alcohol.

At the police station Browning was read his rights under the implied consent laws and consented to a blood alcohol test. Another officer administered a breath test and signed a report alleging a breath alcohol concentration of .10. The report was submitted to DPS and on the basis of the test result, DPS issued an order revoking Browning's driver's license for three months.

Browning asked for and received an administrative hearing. The hearing officer sustained the revocation and Browning timely lodged an appeal in the District Court of Payne County. At trial Browning's demurrer to DPS's evidence was overruled and, except for modifying the ninety-day suspension order to allow Browning limited driving privileges during the final sixty days, the action of DPS was upheld. Browning appeals.

### II

The petitioner first contends that the trial court erred in overruling his demurrer because DPS lacked jurisdiction "due to the flawed officer's report."

The argument is that "a fatal deficiency apparent on the face" of the "Officer's Affidavit and Notice of Revocation"—the document executed in an effort to comply with § 754(C)[1]—deprived DPS of jurisdic-

---

1. The relevant terms of 47 O.S.Supp.1990 § 754(C), provide:

   "Upon receipt of a written blood or breath test report reflecting that the arrested person had an alcohol concentration of ten-hundredths (0.10) or more, accompanied by a sworn report from a law enforcement officer that he had reasonable grounds to believe the

tion to revoke Browning's driver's license.[2] More specifically, the petitioner says, the testing officer failed to fill in the blank provided for the "Simulator Control–Test Result"—a test intended to confirm the accuracy of the testing device at the time of the licensee's breath test. This test presumably is required by the rules and regulations of the Board of Tests for Alcohol and Drug Influence.[3] *See also* 47 O.S. Supp.1990 § 759(B).[4]

At trial the court took judicial notice of the existence of the Board's rules and regulations, among which is Rule & Regulation No. 88–25—a rule said to require an analytical control test.[5] The omission from the affidavit of such control test result is, the petitioner urges, a patent deficiency fatal to DPS jurisdiction.

DPS's threshold jurisdiction to issue a license revocation order is established upon receipt of an "Officer's Affidavit and Notice of Revocation"[6] which facially discloses two items of information: (1) A breath test result of at least 0.10 and (2) the arresting officer's sworn affidavit

showing probable cause to believe the arrestee had committed an alcohol-related driving offense. 47 O.S.Supp.1990 § 754(C); *Chase v. Department of Pub. Safety,* 795 P.2d 1048 (Okl.1990).

At the timely requested administrative hearing the burden is, of course, upon DPS to prove by a preponderance of the evidence that the facts underlying the revocation order demonstrate compliance with procedures specified by the Board of Tests for Alcohol and Drug Influence. 47 O.S. Supp.1990 § 754; *Appeal of Dungan,* 681 P.2d 750 (Okl.1984). *Dungan* identified the triable issues, saying:

"[T]he hearing shall be recorded and its scope shall cover the *issues* of whether the officer had reasonable grounds to believe the person had been driving while under the influence of alcohol and whether the person was placed under arrest. If the revocation is based upon a breath or blood test result, the scope of the hearing shall also cover the issues of whether: (1) *the testing procedures used were in accordance with the existent*

---

**2.** *Application of Baggett,* 531 P.2d 1011 (Okl. 1974) (*rev'd on other grounds,* 680 P.2d 365, 368), holds that the affidavit invests DPS with jurisdiction to initiate proceedings to revoke a driver's license.

**3.** Title 47 O.S.Supp.1990 § 752(7), requires that:
   "Tests of blood or breath for the purpose of determining the alcohol concentration thereof ... to be considered valid and admissible in evidence under the provisions of this title, shall have been administered or performed *in accordance with the rules and regulations of the Board* [of Tests for Alcohol and Drug Influence]." (Emphasis added.)

**4.** Subject statute provides:
   "Collection and analysis of a person's blood, breath, saliva or urine, to be considered valid

arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, the Commissioner of Public Safety shall revoke the license to drive of the arrested person and any nonresident operating privilege for a period of ninety (90) days or more as provided by Section 2 of this act."

and admissible in evidence, whether performed by or at the direction of a law enforcement officer or at the request of the tested person, shall have been performed *in compliance with the rules and regulations adopted by the Board of Tests for Alcohol and Drug Influence* and by an individual possessing a valid permit issued by the Board for this purpose." (Emphasis added.)

**5.** As we mention in Part III of this opinion, there is nothing in the record disclosing exactly what the court noticed. It did not request nor was it supplied with a copy of the Board rules and regulations. However, the parties agree that R & R No. 88–25 requires the testing officer to run a control test consisting of an "[a]nalysis for alcohol of at least one suitable reference or control sample of known alcohol concentration ... must coincide with the corresponding vapor-alcohol concentration target value within one-hundredths gram per two hundred and ten liters...."

**6.** It consists of essentially three major sections: (1) The affidavit of the arresting officer reciting facts establishing probable cause for the arrest; (2) the "Breath–Alcohol Analysis Record & Report;" and (3) the notice of license revocation.

*rules of the Board of Tests for Alcohol and Drug Influence;* (2) the person was advised that his privilege to drive would be revoked or denied if the test result reflected an alcohol concentration of ten-hundredths (0.10) or more; (3) the test result in fact reflects such alcohol concentration; and (4) the breath or blood specimen was obtained from the person within two (2) hours of his arrest." (Emphasis added.)

*Dungan,* 681 P.2d at 752.

Following an ill-fated administrative hearing, a trial de novo was held in the district court. During this proceeding DPS attempted to cure the report's facial omission by introducing, over the petitioner's objection, a document entitled "Log of Tests and Maintenance Record." It was identified by the testing officer as the record kept as a matter of procedure in order to have "a record of the number of tests and the tests that are done on each machine." He further testified that he *had* performed a "reference test" following standard procedure and that, although he had no personal knowledge of the Board's rules and had not recorded the results on the affidavit, the "breathalizer [*sic*] log" showed the "Ref. Test Results" as .099—a result "within tolerance." The state thus concluded that when the affidavit and the log are read *together,* "all of the appropriate information" required to uphold the revocation order was shown.

■ The evidence adduced by DPS indicates that the problem facing this court differs from that confronting the *Chase* court in that the defect in *Chase* was not only *apparent* on the face of the affidavit, but *confirmed* by testimony in the district court. Here the issue is whether the failure of the officer's report to facially disclose a procedural step essential to uphold DPS's revocation order can be cured *post rem suscitatam* by presenting evidence in the district court that the requirement was in fact met.

We hold that it can. The affidavit contained the requisite information for DPS to issue the revocation order—the breath test results and the arresting officer's affidavit. It was not disputed that a Board rule required a control reference test, which made the test a proper subject of inquiry in both the administrative hearing and the district court proceeding. The record further discloses that the state carried its burden of proof by showing compliance with the reference test requirement through testimony of the testing officer and introduction of the log of tests into evidence. Thus the omission of the reference test results from the affidavit was overcome by the admission of contemporaneous documentation kept in the course of regular procedure and subject to in-court verification and authentication.

The petitioner's first proposition of error is therefore without merit.

### III

The petitioner further contends, however, that there was insufficient evidence to show that the breath-alcohol test was "administered and performed" in accordance with the procedures prescribed by the rules and regulations of the Board of Tests for Alcohol and Drug Influence as required by § 752(7) and *Appeal of Dungan, supra.* The contention is that Board ordination of such testing procedures has jurisdictional implications and therefore requires proof at both the administrative and district court levels. With this contention we agree.

■ The state must prove compliance with the applicable *rules* prescribed by the Board for the administration of a breath test. *Westerman v. State,* 525 P.2d 1359 (Okl.Cr.1974). More specifically, DPS must prove, among other things, that "the testing procedures used were in accordance with the existent rules of the Board of Tests for Alcohol and Drug Influence." *Appeal of Dungan,* 681 P.2d at 752. It is axiomatic that "[k]nowledge of the specific rules and regulations governing the procedures for administering the breathalyzer test are necessary for the trial judge."

*Mayton v. State*, 721 P.2d 826, 827 (Okl.Cr. 1986). And if a dispute develops concerning what the rules are, the court must resolve it before the rights of the parties can be determined. This requires production of the relevant rules at the hearing.

■ In the case at bar, the testing officer, Randy Lowrey, testified that he was a state "certified breath analysis operator" and that on the night in question he conducted a test on the petitioner by following a written "step by step" procedure *posted above the machine*. And although the officer testified concerning what he recalled of the steps he followed in preparing the machine and administering the test, the posted procedure was not placed into evidence. Indeed, on cross-examination, the officer testified that although he had no personal knowledge of the specific rules and regulations of the Board, he "thought" those rules had a "strong influence" on the detailed procedure he said he followed in administering the test. The officer also referred to the "Log of Tests and Maintenance Record" which, in addition to the above-mentioned reference test results, contained the statement of the maintenance supervisor that the machine had been inspected and tested "in accordance with B.O.T. Rules and Regulations" and "found the equipment to be working properly within standards."

At the close of the evidence the petitioner demurred to DPS's evidence on the ground it was insufficient to support the revocation order in that the applicable rules and regulations of the Board in existence at the time of the petitioner's arrest had not been introduced into evidence, and therefore the court could not tell whether DPS had shown compliance with them. DPS then asked the court to take judicial notice of the governing Board rules and regulations. The petitioner objected on the ground there was a dispute about what the rules were and this was something DPS had to prove in order to make its case. What DPS is doing, the petitioner contended, is referring to the procedure set out in "Action No. 88–4" which is not a Board-adopted rule as required by statute but only an "action" prepared and recommended by the Board's director.

More specifically, the petitioner's argument was that Board-adopted Rule & Regulation No. 88–25 outlines the "approved methods and devices for analysis of alcohol in specimens of breath,"—one of which is the simulator control test—but that by statute the Board, *not its director*, must adopt operating procedures for implementing those methods. Rule & Regulation No. 88–25, however, dictates that "[e]ach such analysis shall be performed in compliance with Operating Procedure(s) *prescribed and approved by the State Director* of Tests for Alcohol and Drug Influence" which procedure the director set out in "Action No. 88–4." This, said the petitioner, amounts to an unlawful delegation of the Board's statutory obligation to adopt rules of procedure for administering a breath test.[7] Since it was clear that the Board had not adopted a rule prescribing the procedure for performing a breath test, the petitioner concluded that the state had failed to prove a jurisdictional foundation for subject revocation.

"Your Honor," said the petitioner's counsel, "I am not attacking their rules ... I'm saying they don't have one."

"Well," responded the court, "that was my understanding."[8]

The trial court did not require that the Board rules and regulations be introduced

---

7. *See supra* nn. 3 and 4.

8. The court further said:
    "Well, I think that's the question he has raised. Let me narrow this down. You did request the Court take judicial notice and at the same time there was an objection made and I am not sure I ever acknowledged your request. In any event, if I didn't the Court takes judicial notice of those—I will call them rules. Now, we are on the question of whether or not they are rules. So if you want to respond to that you may."

into evidence nor did it pass on the issue raised except implicitly by overruling the petitioner's demurrer to the state's evidence. The demurrer was renewed again at the close of the evidence and again overruled.

Assuming all that the state proved was true, the evidence showed that the testing officer did not know what the Board rules were, and that the state declined to produce any procedural rule for the testing other than referring to the proposed one devised by the director in Action No. 88–4. By its rulings the court implicitly concluded that such a procedural rule has been adopted by the Board and that there was sufficient evidence that the breath test had been conducted in compliance with that procedure.

This was error. The substance and existence of pertinent Board rules were questioned; and since the rules were not offered into evidence there was no way the court could resolve the dispute As the bar committee points out in its commentary regarding certain legislative facts, a court "is *required* to take judicial notice of matters of law of common notoriety." Such matters include "the common law, constitutions and public statutes in force in every state." 12 O.S.1981 § 2201(A). The law also requires that there be on file the "duly published regulations of governmental subdivisions or agencies of this state." *See* 75 O.S.Supp.1990 §§ 251, 252, 255 and 256. And, as the committee commentary to 12 O.S.1981 § 2201(B)(1) states, courts are giv-

en statutory discretion to take judicial notice of such "matters of law of less notoriety *if he can properly be informed.*" (Emphasis added). Similarly, adjudicative facts which are not subject to reasonable dispute may be judicially noticed if the court is "requested by a party *and supplied with the necessary information.*" 12 O.S.1981 § 2202(D) (emphasis added).

Judicially noticing agency rules promulgated pursuant to the requirements of the Administrative Procedures Act, 75 O.S. Supp.1990 §§ 250 through 323, was held by the court in *Lone Star Helicopters, Inc. v. State*, 800 P.2d 235 (Okl.1990), to be something a court must do. Said the court: "These rules are matters of public record and need not have been incorporated into the record for review. We *must* take judicial notice of them." *Id.* at 237. At the same time, the *Lone Star* court took care to point out that "the *validity* of the rules promulgated by the Director of Public Affairs *has not been questioned*" and "[t]here is *no dispute* that the administrative remedy in question is delineated in the March 1987 version of the agency's publication." *Id.* at 237 nn. 9 and 10 (emphasis added).

In the case at bar, however, the existent rules were questioned. The petitioner's demurrer *put in issue* not only the validity of procedures governing administration of tests, but also the very existence of properly adopted Board rules.[9] Under such circumstances it became necessary for the trial court to (1) determine what the relevant rules and regulations were, (2) de-

9. By statute, the Board of Tests for Alcohol and Drug Influence is authorized to:

"prescribe uniform standards, conditions, methods, procedures, techniques, devices, equipment and records for the collection, handling, retention, storage, preservation and delivery of specimens of blood, breath, saliva and urine obtained for the purpose of determining the alcohol concentration thereof or the presence and concentration of any other intoxicating substance therein. *The Board ... may adopt, amend and repeal such other rules and regulations consistent with this chapter as the Board shall determine proper.*"

47 O.S.Supp.1990 § 759(C) (emphasis added). This delegation of rulemaking authority by the legislature does not constitute an unconstitu-

tional delegation of authority. *Edwards v. State*, 544 P.2d 60 (Okl.Cr.1976). This autonomy does, however, conflict with 75 O.S.Supp. 1990 § 250.4, which states that *"[e]xcept as is otherwise specifically provided in this subsection,* each agency is required to comply with [agency filing and publication requirements for rules] of the Administrative Procedures Act." *The Board is not one of the agencies specifically exempted from compliance with the full rulemaking procedure set out in Article I of the Act,* which, among other things, requires an agency to initially adopt a proposed rule, submit it to the legislature for approval as a "[f]inal or finally adopted" rule, which then becomes a "[p]romulgated rule" when it is filed and published in

termine if the procedure followed by the officer in testing the petitioner was one prescribed by a Board rule, and (3) determine whether the evidence adduced by DPS proved compliance with Board rules. For, as the court said in *Linscome v. State,* 584 P.2d 1349, 1350 (Okl.Cr.1978), "no matter ... put in issue by the pleadings can be considered undisputed for purposes of judicial notice." Hence, where a party seeking to have a fact judicially noticed meets a challenge by the opposing party, the trial court must conduct a hearing on "the propriety of taking judicial notice and the scope of the matter noticed." 12 O.S.1981 § 2203(B).

Here, because the trial court did not require evidence of the disputed rules and regulations, it had no basis for determining exactly what it was judicially noticing. The court should have required DPS to produce a copy of the Board's rules and regulations in existence at the time of the petitioner's arrest, hear any countervailing proof from the petitioner, and then determine (1) what the duly adopted Board rules and regulations governing administration of tests were at the time of the petitioner's arrest, and (2) whether the state had carried its burden of proof by showing compliance with those testing procedures.

What it boils down to is this. The testing officer did not know what the relevant Board rules required of him, and the trial court did not know what the rules required of the testing officer. Thus, there is nothing in the record to support the trial court's order finding that the Board rules and regulations were complied with or the implied finding that the procedures followed by the testing officer were the procedures prescribed by a published Board rules. In short there was a failure of vital proof.

### IV

Since the Department failed to carry its burden of proof, the trial court's judgment is unsupported by sufficient evidence, and is therefore reversed.

REIF, P.J., concurs, and MEANS, J., concurs in part and dissents in part.

accordance with the Act. 75 O.S.Supp.1990

MEANS, Judge, concurring in part and dissenting in part.

I concur in the result reached by the majority in deciding the first two propositions of error advanced by Appellant. The officer's sworn report complied with the affidavit requirements of 47 O.S.Supp.1990 § 754(C), and gave the Commissioner of Public Safety authority to act.

I dissent from the conclusions reached in disposing of Appellant's third proposition of error. Appellant has urged that there was insufficient evidence to show that the breath-alcohol test administered to him was in accord with the Rules and Regulations of the Board of Tests for Alcohol and Drug Influence, as required by 47 O.S.Supp.1990 § 754(E)(1)(a). The detailed testimony of Officer Lowrey established that there was substantial compliance with the requirement of section 754(E)(1)(a), *i.e.,* that the testing procedures used were in accordance with *existent* rules of the Board of Tests for Alcohol and Drug Influence, cognizable of judicial notice under 12 O.S.1981 § 2201(B)(1). The trial judge's decision, after hearing this matter de novo, was correct and should be affirmed.