**Richard L. FAIRRES, Appellant,**

v.

**STATE of Oklahoma, ex rel., DEPARTMENT OF PUBLIC SAFETY, Appellee.**

No. 82507.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 1, 1994.

Rehearing Denied March 7, 1994.

Stephen G. Fabian, Jr., Edmond, for appellant.

Earl L. Reeves, Oklahoma City, for appellee.

## MEMORANDUM OPINION

HANSEN, Judge:

In this action seeking vacation or modification of the Department of Public Safety's (DPS) revocation of Appellant's drivers' license, Appellant Richard Fairres (Fairres) seeks review of the trial court's order sustaining the revocation.

In May 1990, Fairres was arrested for driving under the influence of alcohol. After being advised under the Oklahoma Implied Consent Law,[1] he consented to a breath test which revealed an alcohol concentration of 0.013g/210L.

Based on the breath test results, DPS revoked Fairres' drivers' license for a period of one year. The revocation was upheld after a hearing within DPS. Fairres appealed to the district court,[2] which sustained the revocation. Upon further appeal by Fairres, this Court reversed the lower court's order and remanded the matter for a new trial.[3]

The new trial was held on August 25, 1993. As in the previous trial de novo before the district court, Fairres chose to stand on his demurrer to DPS' evidence. The trial court again sustained the revocation and denied Fairres' motion for new trial. Fairres brings this appeal from these trial court determinations.

■ Each of Fairres' three appellate propositions assert error related to alleged evidentiary deficiencies. We, however, will not reverse or disturb a trial court finding if there is any evidence, or reasonable inference to be drawn therefrom, which tends to support the finding. *Smith v. State ex rel. Department of Public Safety*, 680 P.2d 365 (Okla.1984) (implied consent case).

■ Fairres first alleges DPS "failed to prove that the equipment used was appropriate for use in testing and therefore have not shown compliance with the BOT rules". The BOT to which Fairres refers is the Board of Tests for Alcohol and Drug Influence (Board).[4]

Compliance by DPS with Board's rules is mandated by, among other authorities, 47 O.S.Supp.1988 § 759. Section 759 provides, in relevant part:

B. Collection and analysis of a persons's blood, breath, saliva or urine, to be consid-

---

1. 47 O.S.1982 Supp. §§ 751 et seq.

2. Authorized under 47 O.S.1988 Supp. §§ 6–211 & 755.

3. Unpublished Memorandum Opinion filed April 7, 1992 in Appeal Number 78,760.

4. Board was "re-created" by 47 O.S.Supp.1988 § 759.

ered valid and admissible in evidence, ..., shall have been performed in compliance with the rules and regulations adopted by the Board of Tests for Alcohol and Drug Influence ...

Further, in the DPS administrative revocation hearing, and in an appeal of the revocation to the district court, the scope of the issues covered must include whether:

... the testing procedures used were in accordance with existent rules of the Board of Tests for Alcohol and Drug Influence, ...

47 O.S.Supp.1988 § 754(E)(1)(a).[5]

The record contains a copy of the Officer's Affidavit and Notice of Revocation completed by the police officer administering the breath test to Fairres. This document, which was completed contemporaneously with the test, reflects the testing device used was a Smith & Wesson model 900 and that the breath-alcohol simulator was a Smith & Wesson model MKIIA.

The trial court took judicial notice of Board's rules and regulations without objection by Fairres.[6] The trial court also had before it a copy of Board's rules and regulations in controversy. See, *Browning v. State ex rel. Department of Public Safety*, 812 P.2d 1372 (Okla.App.1991).

Board's Rule and Regulation 85-22 specifically lists the Smith & Wesson model MKIIA simulator as an approved analysis device. Board's Rule and Regulation 88-25 approves use of the "Model 900 and 900A Breathalyzer (manufactured by National Draeger, Inc., ..., or its predecessors or successors)" as a breath-alcohol testing device, but does not expressly include Smith & Wesson.

However, Rule and Regulation 88-25 specifically supersedes the previous rule and regulation approving testing devices. The previous rule and regulation, which was admitted into evidence, lists as the approved device the "Model 900 or Model 900A Breathalyzer apparatus (manufactured by Smith & Wesson ...)". We find it reasonable to infer from its use that "Breathalyzer" is a brand name for the testing device, and that Smith & Wesson is a predecessor to National Draeger, Inc. in its manufacture.[7]

Fairres next contends DPS failed to show compliance with Board rules and regulations in regards to disposable materials and supplies used in the breath-alcohol test. Board's Rule and Regulation 83-2 provides that such materials and supplies:

... shall be new, previously unused, commercial items designed and manufactured for that purpose and specifically approved for such use by the State Director of Tests for Alcohol and Drug Influence; ...

In his Action No. 83-4, the State Director of Tests for Alcohol and Drug Influence (Director)[8] approved certain "single-use" items for use with the Model 900 and 900-A Breathalyzer instrument. Action 83-4 cites the Implied Consent Law and Board's Rule and Regulation 83-2 as authority for its issuance,[9] and notes the items approved are suitable for use in the performance of analyses for alcohol in specimens of human breath.

Among those items approved in Action 83-4 was a breath test kit manufactured by Guth Laboratories. In his testimony, the police officer who conducted the breath test stated he obtained the disposable materials and supplies used from a box labeled from Guth Laboratories and that each piece was sealed in plastic.

---

5. The § 754 statutory scope of inquiry was extended to district court de novo hearings by *Smith v. State*, 680 P.2d at 368.

6. Fairres did object to judicial notice of Board's "Actions" and the trial court did not take notice of those items.

7. Compare Board's Rule and Regulation 24, which approves use of the Model 5000–D *Intoxilyzer* (manufactured by CMI, Inc.) (emphasis added).

8. 47 O.S.Supp.1988 § 759(A) authorizes Board, "as necessary for the performance of its functions", to appoint a State Director of Tests for Alcohol and Drug Influence.

9. Fairres does not raise the issue of Board's authority to delegate the right to approve materials and supplies for use in breath-alcohol analyses. We will therefore not address that issue.

This evidence is sufficient to establish, in accordance with Board's Rule and Regulation 83–2, that the materials and supplies used were new, manufactured for the purpose of breath-alcohol analysis, and were specifically approved for use by Director.

Fairres asserts in his second proposition that the trial court erred in finding the breath-alcohol test administered Fairres was in accordance with Board's rules and regulations as required by 47 O.S.Supp.1988 § 754. Fairres specifically contends the procedure followed by the police officer administering the breath test was not in compliance with Board's rules.

The police officer testified he followed the operating procedure contained on DPS' exhibit number 4 in administering the test. That exhibit is a copy of Action No. 88–4, issued by Director, and is entitled *Operating Procedure for Breath–Alcohol Analysis with Model 900 and 900A Breathalyzers.*

Action No. 88–4 reflects on its face it was issued under the authority of the Implied Consent Law and Board's Rule and Regulation No. 88–25. Rule and Regulation No. 88–25, *Approved Methods and Devices for Analysis of Alcohol in Specimens of Breath,* directs that:

(2) Each such analysis shall be performed in compliance with Operating Procedure(s) prescribed and approved by the State Director of Tests for Alcohol and Drug Influence.

█ Action 88–4 is in implementation of Board's rules and is issued at Board's specific direction. The Action is a "cook-book" type directive, setting forth a mechanical, step-by-step process to be followed in performing the breath-alcohol analysis. Its issuance by Director was a properly delegable function because it did not require the use of Board's discretion or exercise of its judgment. See, *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Commission,* 764 P.2d 172 (Okla.1988) (footnote 25).

The evidence establishes Fairres' breath-alcohol test was administered according to operating procedures in compliance with Board's rules and regulations.

As his final proposition, Fairres asserts there was insufficient evidence to show the breath-alcohol test equipment was maintained in accordance with Board's rules and regulations. The thrust of Fairres' argument is that expression of a verification test result as a % w/v value, rather than stating it as g/210L, precludes a determination of compliance with rules and regulations.

Board's Rule and Regulation 88–25 requires specified maintenance of the breath-alcohol analysis equipment and a verification analysis after change of solution in the alcohol breath simulator. The verification analysis result "must coincide with the corresponding vapor-alcohol concentration target value within one-hundredth's gram per two hundred and ten liters ($\pm 0.01$g/210L)".

The police officer who maintained the equipment used in testing Fairres, Officer Graham, testified the reference tests he performed "were within the allowable limits established by the Board of Tests" and that he reported the results of the tests on DPS' exhibit No. 5.

Exhibit No. 5 is a printed Board form, *Log of Tests and Maintenance Record.* It contains a preprinted block for reporting simulator reference test results, with the test result values expressed as % w/v. The maintenance supervisor is required to fill in only the numerical value of the test.

Officer Graham, who has been a Breathalyzer maintenance supervisor since 1977 or 1978, testified that the manner of expressing reference test results—% w/v or g/210L— were merely different expressions of the same results. His testimony is supported by DPS' exhibit no. 6, which is the rule and regulation superseded by Rule and Regulation No. 88–25. The earlier rule requires verification analysis results to coincide with target values within "$\pm 0.01$% w/v".

We find the report of maintenance results using % w/v is in substantial compliance with

Board's rules and regulations. The purpose of the verification analysis and the required report is not an exercise in semantics, but is to ensure the reliability of breath-alcohol testing. While uniformity of expression is desirable for that latter purpose, it is not a necessity where the terms are known to reflect identical results.

The order of the trial court is AFFIRMED.

JONES, P.J., and ADAMS, J., concur.