2002 OK 46

**Perry JUSTUS, Plaintiff/Appellee,**

v.

**STATE of Oklahoma, ex rel. DEPART-MENT OF PUBLIC SAFETY, De-fendant/Appellant.**

No. 96,744.

Supreme Court of Oklahoma.

May 28, 2002.

Rehearing Denied Jan. 17, 2003.

Larry A. Morgan, Odell D. Campbell, Oklahoma City, OK, for Appellee.

J. Robert Blakeburn, Oklahoma City, OK, for Appellant.

BOUDREAU, Justice:

¶1 The parties stipulated to the following facts. Perry Justus (Justus) lives at Quail Ridge Apartments in Oklahoma City, Oklahoma. The Quail Ridge parking lot has three entrances. All three have signs reading, in pertinent part: "Private Property, Tenants and Invited Guests Only!" Two of the entrances have gates that are locked after 10:00 p.m. The third entrance is the main entrance and has no gate, but opens directly into the main office where the business of the apartment complex is transacted.

¶2 On August 24, 2000, at about 3:00 a.m., Oklahoma City police officers arrested Justus in the Quail Ridge parking lot for driving under the influence of alcohol. Pursuant to Oklahoma's implied consent statute, 47 O.S. 2001 § 751, the officers asked Justus to submit to a chemical test. He refused. As a result, his driver's license was revoked. The Department of Public Safety (DPS), in an implied consent hearing, ruled that Justus had been arrested upon reasonable belief that he was operating or in actual physical control of a motor vehicle on "the public roads, highways, streets, turnpikes or other public place of this state" while under the influence of alcohol, 47 O.S.2001 § 753, and that after being requested to submit to a chemical test and being informed that his driver's license would be revoked, Justus refused to submit to the test. DPS revoked his license and he appealed to the district court. The district court granted summary judgment to Justus, reversing DPS' revocation order. The district court found as a matter of law that the Quail Ridge parking lot is not a public parking lot for purposes of the im-

plied consent statute. The Court of Civil Appeals reversed. We previously granted certiorari.

¶3 Appeals from implied consent revocation orders are heard *de novo* in the district court, both on the law and on the facts. *In re Braddy,* 1980 OK 44, 611 P.2d 235, 237–38. In this case, since the parties entered into stipulated facts at the district court level, the issue presented on certiorari is a pure question of the application of a statute to the undisputed facts. This presents a question of law that we review *de novo. Manley v. Brown,* 1999 OK 79, 989 P.2d 448, 455. In a *de novo* review, we have plenary, independent and non-deferential. authority to determine whether the trial court erred in its application of the law. *Id.*

¶4 "The primary goal of statutory construction is to determine legislative intent." *TXO Production Corp. v. Oklahoma Corp. Comm'n,* 1992 OK 39, 829 P.2d 964, 968–69. "It is presumed that the Legislature has expressed its intent in a statute and that it intended what is so expressed." *Id.* at 969. "A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning." *Keating v. Edmondson,* 2001 OK 110 ¶15, 37 P.3d 882, 888.

¶5 We begin our review with Oklahoma's implied consent statute, 47 O.S.2001 § 751. This statute provides in pertinent part that "[a]ny person who operates a motor vehicle upon the public roads, highways, streets, turnpikes or other public place within this state shall be deemed to have given to consent to a test or tests of such person's blood or breath, for the purpose of determining the alcohol concentration[.]" 47 O.S.2001 § 751(A)(1). If such person refuses the chemical test, DPS "shall revoke" the person's driver's license. 47 O.S.2001 § 753.[1]

¶6 Thus, under §§ 751 and 753, if the Quail Ridge parking lot is a public parking lot, Justus impliedly consented to taking a

---

1. This is but a short excerpt of § 753, but it is the only language of § 753 that is material to the narrow issue in this case.

chemical test and his refusal to take the test supports DPS' revocation of his driver's license. On the other hand, if the parking lot is not a public parking lot, the implied consent statute is not applicable and his refusal to take a chemical test does not support DPS' revocation of his driver's license.

¶ 7 We look to the statutory definition of public parking lot to resolve the issue. The Legislature has defined public parking lot for purposes of Title 47.[2] A public parking lot is "[a]ny parking lot on a right-of-way dedicated to public use or owned by the state or a political subdivision thereof." 47 O.S.2001 § 1–142(b). Using the plain meaning of the statutory language, there are only two categories of public parking lots: (1) those on a right-of-way dedicated to public use and (2) those owned by the state or a political subdivision thereof. Because the Quail Ridge parking lot does not fall into either of the two categories, it is not a public parking lot for purposes of Oklahoma's implied consent statute.[3]

█ ¶ 8 Further, we reject DPS' suggestion that we should follow *State v. Houston*, 1980 OK CR 63, 615 P.2d 305, which held that a tavern parking lot was a public parking lot.[4] In deciding *Houston*, the Oklahoma Court of Criminal Appeals quoted the statutory definition of public parking lot in § 1–142(b), but did not apply the plain meaning of the statutory language. Rather, it interpreted the language broadly to include not only any parking lot that falls within the statutory definition but also "any parking lot which is adjacent to a right-of-way or which the general public has access to." *Id.* at 306.

█ ¶ 9 We view the Court of Criminal Appeal's interpretation of § 1–142(b) as too broad in that it would make virtually *every private* parking lot a public parking lot for purposes of Title 47. "The general rule is that nothing may be read into a statute which is not within the manifest intention of the legislature as gathered from the act itself." *Huffman v. Oklahoma Coca–Cola Bottling Co.*, 1955 OK 76, 281 P.2d 436, 440. "Where the language of the statute is clear in limiting its application ... and leaves no room for doubt as to the intention of the legislature, there is no authority to transcend or add to the statute, [and the statute] may not be enlarged, stretched, or expanded, or extended to cognate or related cases not falling within its provisions." *Id.*

¶ 10 In sum, the Legislature defined public parking lot for purposes of Title 47. The statutory definition is clear and unambiguous. Using the plain meaning of the statutory language, we hold that the Quail Ridge parking lot is not a public parking lot for purposes of Oklahoma's implied consent statute because it is not on a public right of way dedicated to public use and is not owned by the state or a political subdivision thereof. We vacate the opinion of the Court of Appeals and affirm the trial court's judgment.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT JUDGMENT AFFIRMED.**

¶ 11 WATT, V.C.J., and LAVENDER, OPALA, SUMMERS, and BOUDREAU, JJ., concur; HARGRAVE, C.J., and HODGES, KAUGER, and WINCHESTER, JJ., dissent.

---

2. The definition of public parking lot is found in Chapter 1 of Title 47. Chapter 1 contains definitions that expressly apply to Title 47. *See* 47 O.S.2001 § 1–101.

3. The parties stipulated that the Quail Ridge parking lot is private property, and there is no allegation that it is on right of way dedicated to public use.

4. We note that the Court of Civil Appeals, in *Solenberg v. State ex rel. DPS*, 1993 OK CIV APP, 191, 871 P.2d 440, followed *Houston*.