2015 OK CIV APP 42

**Arthur Eric DRAKE, Plaintiff/Appellant,**

**v.**

**STATE of Oklahoma, ex rel. DEPART-MENT OF PUBLIC SAFETY, Defendant/Appellee.**

**No. 112,917.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 10, 2014.

Certiorari Denied April 20, 2015.

Charles A. Ramsey, Charles A. Ramsey, PLLC, Pryor, OK, for Plaintiff/Appellant.

Mark E. Bright, Assistant General Counsel, Department of Public Safety, Oklahoma City, OK, for Defendant/Appellee.

DEBORAH B. BARNES, Chief Judge.

¶ 1 Plaintiff/Appellant Arthur Eric Drake (Licensee) appeals from an Order of the district court denying his petition to reinstate his driver's license filed more than one year after an order revoking his driver's license was issued by Defendant/Appellee State of Oklahoma, ex rel. Department of Public Safety (DPS). We affirm.

## BACKGROUND

¶ 2 Licensee was arrested on May 20, 2012, for operating a vehicle while under the influence. Licensee did not consent to the state's implied consent test and timely requested an administrative hearing as to the suspension of his driver's license. A hearing was held on October 17, 2012.[1] On October 19, 2012, DPS issued an order suspending Licensee's driver's license for a period of one year, from December 17, 2012, to December 17, 2013.[2] On March 11, 2014, Licensee filed a petition to reinstate his driver's license in the district court.[3]

¶ 3 A hearing was held on April 23, 2014, concerning the Licensee's assertion that DPS lacked jurisdiction to revoke or suspend his driver's license and DPS's assertion that because Licensee did not timely appeal the revocation order, the district court lacked jurisdiction to consider the appeal. Licensee argued DPS was without jurisdiction to revoke or suspend his license because the arresting officer's affidavit that was submitted to DPS was "insufficient as a matter of law and did not grant DPS jurisdiction under" 47 O.S.2011 §§ 753 & 754.[4] Licensee relied on *Roulston v. State ex rel. Department of Public Safety*, 2014 OK CIV APP 46, 324 P.3d 1261. Licensee argued the issue before the *Roulston* Court was whether the arresting officer's affidavit was sufficient and did not invoke DPS's jurisdiction.

¶ 4 DPS argued that neither *Roulston* nor another case, *Tucker v. State ex rel. Department of Public Safety*, 2014 OK CIV APP 45, 326 P.3d 542, supported Licensee's jurisdiction argument because, in those cases, the

1. These facts surrounding the revocation of Licensee's driver's license are taken from the parties' appellate briefs. "Admissions in a brief may be regarded as a supplement to an appellate record." *Woods v. Prestwick House, Inc.*, 2011 OK 9, ¶ 15 n. 16, 247 P.3d 1183 (citations omitted). *See also State ex rel. Macy v. Bd. of Cnty. Comm'rs*, 1999 OK 53, ¶ 3 n. 8, 986 P.2d 1130 ("Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record.") (citations omitted).

2. The revocation order was presented to and reviewed by the trial judge but is not in the record on appeal.

3. Licensee alleged that while the suspension time had run and his license was eligible to be reinstated, DPS was requiring him to pay certain reinstatement fees and to provide proof that an interlock device had been installed on his vehicle.

4. Section 753 provides, in part, as follows:
   If a conscious person under arrest refuses to submit to testing of his or her blood or breath for the purpose of determining the alcohol concentration thereof, or to a test of his or her blood, saliva or urine for the purpose of determining the presence or concentration of any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance, none shall be given, unless the investigating officer has probable cause to believe that the

person under arrest, while intoxicated, has operated the motor vehicle in such a manner as to have caused the death or serious physical injury of any other person or persons....
   The Commissioner of Public Safety, upon the receipt of a sworn report of the law enforcement officer that the officer had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol, any other intoxicating substance, or the combined influence of alcohol and any other intoxicating substance and that the person had refused to submit to the test or tests, shall revoke the license to drive and any nonresident operating privilege for a period as provided by Section 6–205.1 of this title.... The revocation or denial shall become effective thirty (30) days after the arrested person is given written notice thereof by the officer or by the Department as provided in Section 754 of this title.
   Section 754(D) provides, in part, as follows:
   Upon the written request of a person whose driving privilege has been revoked or denied by notice given in accordance with this section or Section 2–116 of this title, the Department shall grant the person an opportunity to be heard if the request is received by the Department within fifteen (15) days after the notice.

appellate Court found the officer's affidavit was "fatally flawed" and Licensee only argues the affidavit in the present case is "facially defective." DPS argued the difference has to do with whether an order is "void or voidable." It also argued that in neither case did the appellate court decide jurisdiction.[5]

¶ 5 On May 7, 2014, the district court entered its Order in which it found Licensee failed to timely file an appeal from the October 19, 2012 order of suspension pursuant to 47 O.S.2011 § 6–211(E), and therefore it was without jurisdiction to hear the appeal.[6] The district court found that even if the affidavit was fatally defective because it did not contain the required statutory language, a timely appeal to invalidate the revocation was required by *Roulston* and *Chase v. State ex rel. Department of Public Safety*, 1990 OK 78, 795 P.2d 1048, the Oklahoma Supreme Court decision upon which *Roulston* relied. The district court found the precedent fails to indicate that a fatally flawed affidavit raises a jurisdictional issue, though it raises an appealable issue upon a timely filing. Because Licensee failed to timely appeal, the district court found it was without jurisdiction to set aside the revocation order.

¶ 6 Licensee appeals.

5. At the conclusion of the parties' arguments, the court asked counsel for DPS if he had the arresting officer's affidavit. Counsel for DPS replied he had the original but had not planned to introduce the affidavit because he thought the only relevant document was the order of revocation. The following exchange then occurred:

> [Counsel for DPS]: ... [B]ut I can make [the affidavit] an exhibit as well. Would you like me to do that?
> THE COURT: Yes, please.
> [Counsel for DPS]: Okay.
> THE COURT: And I'm, assuming, [Counsel for Licensee], that is your argument, the affidavit is insufficient?
> [Counsel for Licensee]: It is, Judge, yes.

Instead of using DPS's copy of the affidavit as an exhibit, the trial court asked to review the affidavit. The court then stated, "based upon the exhibits that I have ... received as evidence and reviewed," among other things, that it did not have jurisdiction and was not overturning the revocation.

On appeal, DPS filed a motion to strike Licensee's Exhibit A, the arresting officer's affidavit, appended to his Brief-in-chief arguing the affidavit "was not admitted into evidence as an exhibit" and citing Oklahoma Supreme Court Rule 1.11(e)(1) and (i), 12 O.S.2011, ch. 5, app. 1. By

## STANDARD OF REVIEW

¶ 7 The issue before us is whether the trial court correctly determined that it was without jurisdiction to hear Licensee's appeal of the DPS order revoking his driver's license because Licensee's appeal was untimely. The answer to that issue turns on whether DPS had jurisdiction to issue the order of revocation because of the alleged defect in the arresting officer's affidavit. Questions concerning jurisdiction present a question of law requiring a *de novo* standard of review. *See, e.g., Guffey v. Ostonakulov*, 2014 OK 6, ¶ 10, 321 P.3d 971. "In a *de novo* review," this Court has "plenary, independent and non-deferential authority to determine whether, the trial court erred in its application of the law." *Justus v. State ex rel. Dep't of Pub. Safety*, 2002 OK 46, ¶ 3, 61 P.3d 888 (citation omitted).

## ANALYSIS

¶ 8 In essence, Licensee argues the sworn affidavit of an arresting officer setting forth the statutory requirements set forth in 47 O.S.2011 § 753 is a jurisdictional fact and a prerequisite to the authority of DPS to re-

order of the Oklahoma Supreme Court, the decision on the motion was deferred to the decisional stage.

The exhibit appended to the Brief-in-chief does not comply with Rule 1.11(e)(1) and (i); consequently, despite the foregoing discussions and actions at trial, we grant DPS's motion to strike the exhibit from the appellate record. *See also Chamberlin v. Chamberlin*, 1986 OK 30, ¶ 4, 720 P.2d 721 ("This court may not consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court....") (footnotes omitted). However, the trial court specifically found the affidavit was insufficient and "fatally defective" because it did not contain the required statutory language. That finding is part of the record on appeal.

6. Section 6–211(E) provides, in part, as follows:

> The petition shall be filed within thirty (30) days after the order has been served upon the person, except a petition relating to an implied consent revocation shall be filed within thirty (30) days after the Department gives notice to the person that the revocation is sustained as provided in Section 754 of this title.

voke a driver's license. Further, he argues, because the order is void for lack of jurisdiction, his failure to timely appeal is immaterial because a void judgment can be attacked at any time.

¶ 9 In *Abraham v. Homer*, 1924 OK 393, 102 Okla. 12, 226 P. 45, the Oklahoma Supreme Court set forth three separate elements of the jurisdiction of a court.

> Jurisdiction over the person, jurisdiction over the subject-matter, and jurisdiction to render the particular judgment are three separate elements of the jurisdiction of a court. Each element of jurisdiction is dependent upon both law and fact. Facts showing the service of process in time, form and manner sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction over the person. Facts showing that the matter involved in a suit constitutes a subject-matter consigned by law to the jurisdiction of that court are essential to jurisdiction over the subject-matter of the suit. Facts showing that a particular judgment is rendered in compliance with all existing mandatory law in that regard are essential to jurisdiction to render particular judgment. All such facts are known as jurisdictional facts.

*Id.* ¶ 2 (subparagraph 5) (citations omitted).[7] *See also Parker v. Lynch*, 1898 OK 76, ¶ 0, 56 P. 1082 ("Jurisdiction is the authority by which courts and judicial officers take cognizance of and decide cases.") (Syllabus by the Court); *Robinson v. Okla. Emp't Sec. Comm'n*, 1997 OK 5, ¶ 8, 932 P.2d 1120 (Discussing the difference between venue and jurisdiction the Supreme Court stated " '[j]urisdiction' is a term of comprehensive import. It concerns and defines the power of judicatories and courts.") (citation omitted).

¶ 10 By way of illustration, the *Abraham* Court discussed examples of jurisdictional facts within the context of probate proceedings.

> Applicable to the probate court we often find mandatory statutes which provide that[,] though facts may be presented to the court with jurisdiction over the person and the subject-matter, justifying the court to order real estate of the deceased or of a minor to be sold, and although such an order may have been lawfully made, it may be provided that such sale cannot be confirmed unless the purchase price be equal to a given percentage of the appraised value. In that event facts showing such appraisement in accordance with the mandatory law relate rather to the power of the court to render a judgment of confirmation than to a mere course of procedure, as the result of the appraisement inheres in the judgment itself. *Whenever by a statute which the court has determined to be not merely directory, but absolutely mandatory, the Legislature has required acts to be done and provides that the court shall not render a particular judgment without facts showing compliance with such statute, then such facts are jurisdictional to the power of the court to render that particular judgment.*

*Id.* ¶ 2 (subparagraph 8) (emphasis added).

¶ 11 The Supreme Court further stated that it is upon "making of proper distinction

---

7. The Oklahoma Supreme Court also explained the significance and effect of jurisdictional facts and "quasi-jurisdictional facts":

> Facts showing the service of process, facts showing that the matter involved in a suit constitutes a subject-matter consigned by law to the jurisdiction of the court, and facts showing that a particular judgment is rendered in compliance with all existing mandatory law in that regard are known as jurisdictional facts.... Facts which are not jurisdictional facts, and which do not constitute a part of the cause of action, but which are necessary to set the judicial wheels in motion and to entitle the court to proceed with the exercise of admitted jurisdiction, are known as quasi jurisdictional facts. When those facts are adjudicated by a court possessing the three necessary elements of jurisdiction, such adjudication, in the absence of fraud, is not open to collateral attack.
>
> . . . .
>
> It is not material to the jurisdiction of the court that a cause of action be either pleaded or proven. Although the facts stated in a petition be not merely insufficiently or defectively pleaded, but both in form and substance wholly fail to constitute a cause of action, the court is not solely by reason thereof deprived of jurisdiction over the subject-matter or of the jurisdiction to render a judgment granting such relief as otherwise it may be within the jurisdiction of the court to render.
>
> *Id.* ¶ 0 (Syllabus by the Court).

between quasi-jurisdictional facts and jurisdictional facts [that] often rests the determination of the validity of a judgment." *Id.* ¶ 2 (subparagraph 10). The Court stated statutes that are merely directory—for example, those that "had in mind only an advisable manner of orderly advancement" in a lawsuit "and had not in mind the nature of the judgment to be rendered when the course was run"—are not to be considered "in determining the judicial power of the court to render a judgment." *Id.* ¶ 2 (subparagraph 11). The Court further reasoned, as follows:

> On the other hand, if it appears that in the enactment of such statute the lawmakers, while providing a step in the procedure, had uppermost in mind *the effect of such a step upon the judgment thereafter to be rendered, and intended the taking of such step in the procedure as a condition precedent to the existence of the judicial power of a court to thereafter render the particular judgment,* then such facts, while in a sense being quasi jurisdictional, are clearly jurisdictional facts, necessary to the existence of the third element of jurisdiction. Such statute is a mandatory one.

*Id.* ¶ 2 (subparagraph 11) (emphasis added). The Court continued:

> A directory statute of procedure, such as is above considered, has no direct relation to the substance of the adjudication to be made, while compliance with the mandatory statute above illustrated reaches into the power of the court to render the decree, and the result of such compliance inheres in such decree as a material and substantial part of the judgment itself. If by statute the lawmakers provide that notice shall be posted of the time when a county court shall hear the petition of a guardian to sell his ward's real estate, and the court has already acquired jurisdiction over the person and subject-matter, and over the special proceedings there being had, why, such statute has naught to do with the substance of the judgment which the court will thereafter render and the statute is one of procedure only. But where a statute requires that the land to be sold must be appraised and that the court shall not confirm a sale thereof for less than a given [percent] of the appraised value of the land, then such appraisement, while being a step in the course of procedure, creates a result that inheres in the material substance of the judgment. Facts showing compliance with such mandatory statute are evidently intended by the lawmakers as material to the existence of the power of the court to render the judgment confirming the sale and are jurisdictional facts.

*Id.*

¶ 12 The *Abraham* Court cited *Noble v. Union River Logging R. Co.,* 147 U.S. 165, 13 S.Ct. 271, 37 L.Ed. 123 (1893), wherein the United States Supreme Court also described facts that are quasi jurisdictional—that is, necessary to be proven in order for the court to act—and hence not subject to collateral attack:

> There is, however, another class of facts which are termed "quasi jurisdictional," *which are necessary to be alleged and proved in order to set the machinery of the law in motion,* but which, when properly alleged, and established to the satisfaction of the court, cannot be attacked collaterally. With respect to these facts, the finding of the court is as conclusively presumed to be correct as its finding with respect to any other matter in issue between the parties. Examples of these are the allegations and proof of the requisite diversity of citizenship, or the amount in controversy in a federal court, which, when found by such court, cannot be questioned collaterally.... In this class of cases, if the allegation be properly made, and the jurisdiction be found by the court, such finding is conclusive and binding in every collateral proceeding; and, even if the court be imposed upon by false testimony, its finding can only be impeached in a proceeding instituted directly for that purpose.

*Id.* at 173–74, 13 S.Ct. 271 (citations omitted) (emphasis added).

¶ 13 As to the sworn affidavit required by 47 O.S. § 753, the Oklahoma Supreme Court stated in *Oklahoma Department of Public Safety v. Robinson,* 1973 OK 80, 512 P.2d 128, the following:

The sworn report required to be filed with the Oklahoma Commissioner of Public Safety in conformance with 47 O.S.1971 § 753 is the catalyst in the initial revocation of a license by the commissioner. The matters sworn to in the report are issues which are to be covered and proven at the hearing, if a hearing is requested by licensee. *The report merely sets the wheels of administrative machinery in motion,* and loses its major significance at the time it is acted upon by the commissioner.

*Robinson,* ¶ 37 (emphasis added).[8]

¶ 14 *Robinson* was cited in *Application of Baggett,* 1974 OK 95, 531 P.2d 1011, *overruled on other grounds by Smith v. State ex rel. Dept. of Pub. Safety,* 1984 OK 16, ¶ 6, 680 P.2d 365, wherein the Supreme Court stated, "The affidavit [at issue] was sufficient *to support the initiation of the action* to revoke the driver's license." *Baggett,* ¶ 17 (emphasis added). It was this language from *Baggett* upon which the Court of Civil Appeals relied in *Browning v. State ex rel. Department of Public Safety,* 1991 OK CIV APP 19, 812 P.2d 1372, when it stated that *Baggett* held "the affidavit invests DPS with *jurisdiction* to initiate proceedings to revoke a driver's license." ¶ 7, n. 2 (emphasis added). Neither *Baggett* nor *Robinson,* however, labeled the statements within the § 753 affidavit as jurisdictional facts, rather they described the matters contained within the affidavit as part of the "issues to be covered and proven at the hearing," should the licensee request such a hearing, and as setting "the wheels of administrative machinery in motion." That is, those cases describe the statements within the § 753 affidavit as quasi-jurisdictional facts, "necessary to set the judicial wheels in motion and to entitle the court to proceed with the exercise of admitted jurisdiction." *Abraham,* ¶ 0 (Syllabus by the Court).

¶ 15 The Supreme Court's more recent decision in *Chase* and the Court of Civil Appeal's decision in *Roulston* support the conclusion that the statements within the § 753 affidavit are quasi-jurisdictional facts and that a facially or fatally flawed affidavit is the basis for vacating an order of revocation, not through collateral attack, but rather through a timely appeal to the district court. In *Chase,* the Supreme Court stated the "[t]wo statutory prerequisites for DPS revocation of the" driver's license in the case before it concerned the written report of the driver's breath test, and, significant to the present appeal, "the enforcement officer's sworn report 'that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public roads ... while under the influence of alcohol.'" 1990 OK 78, ¶ 4, 795 P.2d 1048. The Court referred to these items as "legislative standards for essential DPS paperwork," but did not refer to them as jurisdictional facts. In fact, referring to the absence of the arresting officer's signature on the affidavit, the Court stated, "This patent deficiency in the statutorily required DPS material does indeed make [DPS's] revocation order *vulnerable to invalidation, on timely appeal,* for failure to meet the minimum legislatively prescribed standards for the DPS paperwork on which its administrative action must be rested." *Id.* ¶ 5 (footnote omitted) (emphasis added). The Court thus held "when, on appeal to the district court, the trial judge finds a DPS revocation order was issued on administrative documentation that fails to meet minimum standards mandated by the applicable statute, the order should be set aside as fatally flawed." *Id.* ¶ 6 (footnote omitted).

¶ 16 Similarly, in *Roulston,* another division of this Court was concerned with the effect of what the licensee described as a "facially defective" and "fatally flawed" affidavit required by § 753. Unlike the actions

---

**8.** Section 753 has been amended several times since 1971; however, the operative language in the 1971 version is the same as in the current version. It states as follows:

> the Oklahoma Commissioner of Public Safety, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of alcohol or intoxicating liquor, and that the person had refused to submit to the test or tests, shall revoke his license to drive and any nonresident operating privilege for a period of six months. . . .

of Licensee in the present case, in *Roulston,* the licensee timely appealed her revocation to the district court. Like the argument made by Licensee in the present case, the licensee in *Roulston* argued the affidavit was defective and fatally flawed because it failed to include the statutorily required report of the officer that he had reasonable grounds to believe the licensee had been driving a motor vehicle while under the influence of alcohol. Relying on the reasoning in *Chase,* the Court stated:

> Because the Officer's Affidavit did not include the sworn report as required by statute as to the Officer's reasonable grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol, *the evidence* on which the administrative revocation action rested *is patently deficient.* Just as in *Chase,* we find the Affidavit upon which the revocation order rests fatally flawed as a matter of law and thus, that order was properly set aside by the trial court.

2014 OK CIV APP 46, ¶ 11, 324 P.3d 1261 (emphasis added). The Court did not state the DPS order was void for lack of jurisdiction; rather, it was deficient because of the absence of necessary evidence.

¶ 17 We conclude the statements in the § 753 affidavit are not jurisdictional facts, *see Robinson,* ¶ 37, but, in accord with the reasoning in *Chase,* further conclude their absence renders a DPS order of revocation subject to invalidation through a timely appeal to the district court. Because Licensee did not, however, timely appeal from the DPS order, the order of revocation is not subject to collateral attack. The trial court, therefore, properly concluded it was without jurisdiction to hear the appeal.

## CONCLUSION

¶ 18 Although the sworn officer statements required by a § 753 affidavit are a prerequisite to DPS revocation of a driver's license, those statements are not jurisdictional facts the absence of which could subject a revocation order to collateral attack. Rather, their absence subjects the order of revocation to invalidation in a timely filed appeal to the

district court. Because Licensee failed to timely appeal the revocation order, the district court correctly concluded it was without jurisdiction to hear the appeal. Accordingly, we affirm.

¶ 19 **AFFIRMED.**

GOODMAN, J., concurs, and WISEMAN, P.J., dissents.

WISEMAN, P.J., dissenting.

¶ 1 I dissent from the Majority's Opinion. I adopt the same position expressed in my dissents in Cases No. 112,503 and 112,564 regarding the jurisdictional infirmity in DPS' revocation order created by the facially deficient officer's affidavit, an infirmity which subjects the order to vacation by the trial court at any time.

¶ 2 I disagree with the Majority's view in the present case that the statutory mandate of the officer's affidavit of "reasonable grounds" to believe the driver had operated the vehicle under the influence of alcohol is "quasi-jurisdictional." As noted by the Majority, the Oklahoma Supreme Court in *Abraham v. Homer,* 1924 OK 393, 102 Okla. 12, 226 P. 45, stated, "Facts showing the service of process, facts showing that the matter involved in a suit constitutes a subject-matter consigned by law to the jurisdiction of the court, and facts showing that a particular judgment is rendered in compliance with all existing mandatory law in that regard are known as jurisdictional facts." *Id.* ¶ 0 (syl. no. 1 by the Court). Further to the point, *Abraham* clearly holds:

> Whenever by a statute which the court has determined to be not merely directory, but absolutely mandatory, the Legislature has required acts to be done, and provides that the court shall not render a particular judgment without the facts showing compliance with such statute, then such facts are jurisdictional to the power of the court to render that particular judgment.

*Id.* ¶ 2 (subparagraph 8).

¶ 3 Without both statutory prerequisites of (1) a blood or breath test report (47 O.S.2011 § 754(C)) or the driver's refusal of such a test (47 O.S.2011 § 753), and (2) the officer's

sworn report of "reasonable grounds" to believe the driver was driving under the influence, DPS lacked the power to suspend the driver's license. If blood or breath test results (or the driver's refusal of such tests) were lacking, would DPS have the power to revoke this license? My reading of these provisions leads to the conclusion that they are fundamental to DPS' power to act: "Facts showing compliance with such mandatory statute are evidently intended by the lawmakers as material to the existence of the power of the court to render the judgment ... and are jurisdictional facts." *Abraham,* 1924 OK 393, ¶ 2, 226 P. 45 (subparagraph 11).

¶ 4 Because the officer's affidavit here was, on its face, non-compliant with the clear statutory mandate, DPS lacked jurisdiction to order suspension, and such an order was subject to collateral attack at any time. *See Ashikian v. State ex rel. Oklahoma Horse Racing Comm'n,* 2008 OK 64, ¶ 10, 188 P.3d 148. The trial court's May 7, 2014, order should be vacated and the case remanded to the trial court with directions to vacate DPS' order of suspension for lack of jurisdiction. I respectfully dissent.